THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
NAILER JEFFREY *et al.*, Defendants-Appellants.

Fifth District    No. 79-396

Opinion filed March 12, 1981.

Lance Haddix, of Chicago, and Paul David Kelley, legal researcher, for appellant Gary Michael Brown.

John H. Reid and Gary D. Duncan, both of State Appellate Defender's Office, of Mt. Vernon, for appellant Nailer Jeffrey.

William G. Schwartz, State's Attorney, of Murphysboro (Martin N. Ashley and Raymond F. Buckley, Jr., both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE JONES delivered the opinion of the court:

Defendants were jointly indicted for murder committed during the course of a felony based on the underlying felony of burglary. After a joint jury trial, defendants were both convicted as charged. Defendant Nailer Jeffrey was sentenced to a term of 100 to 200 years' imprisonment. Defendant Gary Michael Brown was sentenced to 30 to 75 years' imprisonment. On appeal the defendants contend the evidence of their guilt was insufficient, the indictment was fatally defective, and their retained trial counsel was subject to a disabling conflict of interest. Also, Brown alone urges a fatal defect in the instructions to the jury. We affirm.

The bulk of the State's evidence in this cause consisted of the testimony of three alleged accomplices, Don Childers, Willie Jeffrey, and David Beaver. Willie Jeffrey is Don Childers' stepson and defendant Nailer Jeffrey's grandnephew. He lived at various times with Don Childers, Nailer Jeffrey and David Beaver. Beaver is defendant Nailer Jeffrey's stepson. Defendant Gary Brown was employed by defendant Nailer Jeffrey. Defendants maintain that the accomplices' testimony was so improbable and contradictory that it is incumbent upon this court to reverse defendants' convictions. This contention requires that the evidence be summarized at length.

The State's view of the evidence was that Don Childers, Willie Jeffrey, David Beaver, Nailer Jeffrey, and Gary Brown gathered at Nailer's trailer on the afternoon of Sunday, January 26, 1975. David and Willie, both 15 at the time, and the three men left in Don's car and spent the afternoon driving around and drinking. Sometime after 6 p.m., they stopped at Mrs. Cary Reischauer's home. All five had worked at Mrs.

Reischauer's house topping trees during the previous month. The men instructed David Beaver and Willie Jeffrey to gain entrance to the house by feigning an automobile breakdown and requesting the use of her telephone. Mrs. Reischauer took the number Willie Jeffrey gave and began to call. Willie Jeffrey and David Beaver walked in, grabbed her and let Gary Brown in the back door. Willie Jeffrey and Gary Brown tied her up after disarming her of a small tear gas gun. Then, while Gary Brown gagged her, the boys rifled drawers. Taking about $30 and some change, the gas gun, and some jewelry, the three left through the back door and rejoined Nailer Jeffrey and Don Childers, who were waiting in Don Childers' car. They divided the money on the way back and threw the jewelry out of the car before reaching Nailer's trailer. The next day they learned that Mrs. Reischauer had died of suffocation. That night Gary Brown threw the gas gun into a strip pit west of Marion. It was not recovered. Shortly thereafter the two boys were arrested on a Williamson County charge of battery against an elderly woman. Believing that the Williamson County offense was similar to the instant offense, a Carbondale police officer questioned both boys, both of whom admitted their participation in the Reischauer offense but did not name any other perpetrators. David Beaver served three years with the Department of Corrections for his part in the offense at bar and was on parole at the time of the instant trial. It appears from the comments of the State's Attorney that David Beaver was treated as a juvenile with respect to this offense and that Willie Jeffrey was not so fortunate. Willie Jeffrey had been sentenced to five to 15 and three to nine years' imprisonment for the Reischauer offense, and was in the custody of the Department of Corrections at the time of the instant trial. During subsequent investigations David Beaver and Willie Jeffrey gave statements to police implicating Nailer Jeffrey, Gary Brown, and Don Childers. Don Childers pleaded guilty to involuntary manslaughter in the Reischauer case and was sentenced to five years' imprisonment prior to the instant trial at which he testified for the State.

All three accomplice witnesses were to some extent impeached at trial. Also, each accomplice's testimony contradicted the others' to some extent. The most flagrant example was David Beaver's testimony that both Don Childers and Nailer Jeffrey entered the Reischauer home, which was in direct contradiction to testimony by Willie Jeffrey and Don Childers. Other contradictions and inconsistencies were as follows. Don Childers testified on direct examination that he visited Nailer Jeffrey at the Reischauer house while Nailer was there trimming trees. Later on direct examination, he asserted that Nailer pointed out the Reischauer house on the night of the offense and that he had never visited during the tree-trimming job. On direct examination, Don Childers testified that Gary Brown and Nailer Jeffrey had threatened to throw gasoline on his

children and burn them. On cross-examination, Don Childers denied that such threats had been made and admitted that Gary Brown had taken the children fishing and hunting subsequent to the instant offense.

David Beaver testified that Gary Brown and Nailer Jeffrey tied Mrs. Reischauer. However, David Beaver admitted on cross-examination that in his statement to police two months after the offense he related that he and Willie Jeffrey had tied the victim. It was Don Childers who stated that Gary Brown threw the gas gun into a strip pit. Willie Jeffrey, however, testified that Brown threw the gas gun in the Big Muddy River. David Beaver testified that he (David) threw the gun "[o]ut in the country." David Beaver did not recall any jewelry being taken.

The witnesses did not agree as to how they learned that Mrs. Reischauer had died. According to David Beaver, he heard it the following evening on television. According to Willie Jeffrey he heard it the next day on the radio in Don Childers' truck in the presence of Don Childers and David Beaver. According to Don Childers, Gary Brown and Nailer Jeffrey showed him a newspaper indicating that the victim had died.

David Beaver testified on direct examination that no one wore gloves during the offense. David Beaver admitted that in one statement to police he said that Gary Brown wore gloves and that in another statement he had maintained that no one wore gloves.

The foregoing list of inconsistencies is not exhaustive, and an exhaustive list would serve no useful purpose here. Defendants point out that the accomplice testimony is further weakened by the fact that three years elapsed before David and Willie implicated the others. Gary points to his and his wife's testimony that he spent the day, with the exception of a "couple" of hours, in her company. Defendants maintain that each of the State's witnesses had a motive to falsify his testimony. David Beaver testified that an officer had threatened to return him to custody if he did not testify. Willie Jeffrey stated that he changed his story as to who was involved because "they wasn't present" when he gave the statement and because no one had come to visit him in prison. Don Childers had pleaded guilty and received a five-year sentence. Defendants urge that Don Childers could not have bargained for so favorable a deal if he had not been willing to implicate persons not yet under prosecution.

On the other hand, several matters of record indicate that the foregoing discrepancies were attributable to something less than deliberate fabrication. In particular, the 49-month gap between the offense and the trial could serve to explain discrepancies as to many of the peripheral details. The accomplice witnesses' testimony, particularly Don Childers', indicated that all of the perpetrators were drinking, and that all may have been intoxicated at the time of the offense. Willie Jeffrey testified that

Don Childers had threatened to kill him if he revealed Don Childers' part in the offense, and that Don Childers had stabbed him with a knife upon learning that Willie Jeffrey had discussed the matter with Nailer Jeffrey. David Beaver related a death threat by Nailer Jeffrey. Don Childers testified that after the boys were arrested, the men involved told them they would be treated with leniency due to their ages and that the men would be treated much more severely if their involvement were known.

Another factor to be considered was the relationship of the boys to Nailer, whom they implicated. In view of that relationship, stepson David and grandnephew Willie had good reason not to implicate him falsely. Further, that relationship was such that David and Willie might well have continued to deny Nailer's involvement for fear of reprisals. Both stated that they feared Nailer; thus, fear may have accounted for their initial reluctance to implicate him.

The testimony of Don Childers' wife Bonnie was corroborative of the accomplice testimony, though defendants challenge her credibility. She testified that the five alleged participants left Nailer's trailer together the night of the offense at about dusk and returned after 1 a.m. Two days later, Nailer and Gary came to the Childers and told Don that Mrs. Reischauer had died. Later, after Willie was charged, Bonnie asked Gary whether Willie had killed her. Gary admitted in the presence of Tammy Cooper, Bonnie's daughter, that he (Gary) had killed her. Tammy, testifying for the State, essentially corroborated her mother's account of Gary's admission. However, Bonnie admitted her dislike for Gary. Further, there was testimony by Bonnie's 21-year-old son, Lester, that Bonnie told him a Detective Wiseman had offered her money to testify against Gary and Nailer. Wiseman testified in rebuttal that he had indeed given her $550, which she had previously given to him for deposit in a bank. According to Wiseman, Bonnie had stated that she received that money from two detectives to be used for relocation for her own safety. He denied that the money was given to ensure her testimony.

It is peculiarly the province of the jury to weigh the evidence, judge the credibility of the witnesses, and determine the facts. A reviewing court will not set aside a jury's verdict of guilty unless the evidence is so unreasonable, improbable, or unsatisfactory as to cause a reasonable doubt as to the guilt of the accused. (*People v. Sumner* (1969), 43 Ill. 2d 228, 252 N.E.2d 534.) The duty of this court is to review the evidence carefully, and, if it is not sufficient to remove all reasonable doubt of defendant's guilt, to reverse the conviction. (*People v. Hister* (1975), 60 Ill. 2d 567, 328 N.E.2d 531.) It is well settled that the findings of the trier of fact, including an appraisal of the credibility of witnesses, are entitled to great weight. *People v. Williams* (1976), 65 Ill. 2d 258, 357 N.E.2d 525.

The described inconsistencies notwithstanding, we are of the view

that the verdict should not be disturbed. The deficiencies urged by defendants on appeal were, for the most part, vigorously argued to the jury, which had an opportunity far better than that of this court to determine which witnesses were credible. In view of the testimony, including Gary Brown's alibi testimony, it was apparent that the jury could not believe all of the witnesses who testified. Yet there was ample basis for the jury to conclude that Brown accompanied the boys inside the Reischauer house while Nailer Jeffrey waited outside with Don Childers and that they were fully implicated in the crime. Many of the peripheral matters on which the accomplice witnesses were impeached or contradicted are understandable in view of the length of time between the offense and the instant trial. We do not view their testimony as so improbable or unworthy of belief as to vitiate the verdict.

We turn to defendant Gary Brown's contention that the State's evidence, if believed, proved him guilty of involuntary manslaughter and not murder. Brown notes in support of that argument that (1) Don Childers, David Beaver, and Willie Jeffrey were permitted to plead guilty to involuntary manslaughter, and (2) Brown's conduct was at most reckless and did not evince intent to kill or injure Mrs. Reischauer. The State replies that (1) the issue is waived because defendants did not tender an involuntary manslaughter instruction and (2) a conviction for felony murder is possible even where, as here, the death is unintended. Brown urges in his reply brief that he does not cite error in the instant jury instructions but rather "submits that this Court should exercise its power and reduce the murder conviction to that of involuntary manslaughter."

■■ Since defendant does not seek review of the jury instructions, we do not consider the question of their propriety. Even so, no cause appears to reduce the convictions to involuntary manslaughter. A defendant may be convicted of "felony murder" even though he had no intent to and did not personally kill the victim. (*People v. Miner* (1977), 46 Ill. App. 3d 273, 360 N.E.2d 1141.) The requisite intent for that offense is the defendant's intent to commit the underlying felony, in this case burglary. (*People v. Miner.*) Were the State's witnesses to be believed, that intent was amply proved. Distinguishable is defendant's citation of *People v. Guthrie* (1970), 123 Ill. App. 2d 407, 258 N.E.2d 802. In *Guthrie* the issue was whether the jury should have been given involuntary manslaughter instructions, not whether the State proved only involuntary manslaughter and not murder.

We find no significance in the fact that certain codefendants were permitted to plead guilty to the offense of involuntary manslaughter. The State's decision to "settle" for a guilty plea to that lesser charge could have been, and here presumably was, influenced by legitimate factors other than the prosecutor's opinion of what the "correct" charge should be. See

*Corbitt v. New Jersey* (1978), 439 U.S. 212, 222 n.12, 58 L. Ed. 2d 466, 476 n.12, 99 S. Ct. 492, 499 n.12.

We turn to defendants' contentions that the indictment was fatally defective and requires reversal. The indictment is captioned: "THE PEOPLE OF THE STATE OF ILLINOIS vs. NAILER JEFFERY [*sic*], GARY MICHAEL BROWN, and DONALD RAY CHILDERS, Defendants." Thereafter, under the heading, "BILL OF INDICTMENT," it reads as follows:

> "The Grand Jury charges: That on January 26, 1975, in Jackson County, [left blank] committed the offense of MURDER in that they, without lawful justification, killed Cary Lee Reischauer, a female person, age 77, by performing acts causing the death of Cary Lee Reischauer while committing the forcible felony of Burglary in violation of Chapter 38, Section 19—1, Illinois Revised Statute, 1975, as amended, in violation of Paragraph 9—1(a)3, Chapter 38, Illinois Revised Statutes, 1975, as amended."

Defendant Jeffrey's attack is twofold: (1) The body of the indictment did not name defendants or anyone else as the persons charged, and (2) the indictment did not set forth the elements of the underlying felony of burglary. Defendant Brown concurs in the second of these contentions.

Defendants challenged the sufficiency of the instant indictment by written pretrial motions. The first, filed on behalf of Brown, referred only to the failure of the body of the indictment to name defendants. Thereafter the State moved to amend the indictment by inserting defendants' names in the body of the indictment. Subsequent to both the motion to amend and the withdrawal of Attorney Bernard Paul as defense counsel for Brown, defendants filed a joint motion to dismiss the bill, urging, *inter alia*, that defendants were not named in the body of the indictment and that the indictment did not set forth the precise location of the alleged burglary. Defendants' motions to dismiss were argued and denied prior to trial. No ruling on the State's motion to amend the indictment appears of record.

■■ We consider first the omission of defendants' names in the body of the indictment. In order to withstand a pretrial motion or a motion in arrest of judgment, a charging instrument must strictly comply with the explicitly stated requirements of section 111—3(a) of the Code of Criminal Procedure. (Ill. Rev. Stat. 1979, ch. 38, par. 111—3(a); *People v. Dyer* (1977), 51 Ill. App. 3d 731, 366 N.E.2d 572.) Under that section a charge must state "the name of the accused, if known, and if not known, designate the accused by any name or description by which he can be identified with reasonable certainty."

Defendant Jeffrey candidly quotes in his brief, in pertinent part:

"Generally, the title or caption is not part of the pleading, *unless expressly made so by reference in the body thereof.*" (Emphasis added.) (*Black's Law Dictionary* 266 (4th ed. 1968).) In our view the inclusion of the pronoun "they" in the instant indictment was an obvious reference to the names appearing some five inches above it on the same page, operated as an express incorporation of those names into the body of the charge. The reference to the names in the caption was such that no ambiguity existed as to who was charged.

■■ Defendant Jeffrey maintains, however, that the caption cannot be considered as a part of the count for purposes of determining whether the charge is sufficient. It has long been the rule that the caption of the indictment cannot be considered as the count itself or a portion thereof. (*Duncan v. People* (1838), 2 Ill. (1 Seam.) 456.) But it has been held that defects in the caption will not invalidate the charge and that where the caption varies from the body of the indictment, the body controls. (*People v. Sirinsky* (1970), 47 Ill. 2d 183, 265 N.E.2d 505.) However, it would be an unwarranted extension of the rule to say that courts of this State must ignore the caption when it is not only consistent with the body of the indictment but incorporated into the body by express language contained in the charge. We decline so to hold. We note that defendant has not alleged or shown any prejudice resulting from the form of the instant indictment.

Both defendants contend that the indictment was fatally defective in that it charged them with felony murder but failed to allege the elements and acts necessary to charge the commission of the underlying felony of burglary. The indictment alleged, in pertinent part, that the death of Cary Lee Reischauer was caused "while committing the forcible felony of burglary in violation of Chapter 38, Section 19—1, Illinois Revised Statutes, 1975, as amended * * *." Defendants argue that the indictment must set forth the elements of the underlying felony where felony murder is charged under section 9—1(a)(3) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 9—1(a)(3)), that such specificity in the indictment is required by section 111—3(a)(3) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 111—3(a)(3)), which provides that a charge shall allege the commission of an offense by "[s]etting forth the nature and elements of the offense charged." They further assert that the failure to specify the elements of the underlying felony, burglary here, deprives them of a meaningful opportunity to prepare their defense and precludes them from claiming a conviction or acquittal in bar of a future prosecution. Defendants cite the following language from *People v. Randolph* (1954), 2 Ill. 2d 87, 89, 116 N.E.2d 876, 877:

> "The killing occurred while a robbery was being committed and *the elements of the robbery were alleged, as they should have*

*been* to bring the killing within the statute and to supply the necessary elements to make the killing murder." (Defendants' emphasis.)

■■ Defendants questioned the validity of the indictment in this case by both pretrial and post-trial motions, so we do not consider its sufficiency by the more liberal standards set forth in *People v. Gilmore* (1976), 63 Ill. 2d 23, 344 N.E.2d 456, and *People v. Pujoue* (1975), 61 Ill. 2d 335, 335 N.E.2d 437, where the sufficiency of indictments to charge an offense was considered for the first time on appeal. Since defendants made a pretrial attack upon the sufficiency of the indictment the test we must apply is whether the indictment complies with the stated requirements of section 111—3 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 111—3). (*People v. Williams* (1980), 80 Ill. App. 3d 963, 400 N.E.2d 532.) Even so, we believe that defendants' arguments regarding the insufficiency of the indictment are not well taken and that the indictment must be held to be sufficient.

The language from the *Randolph* case is not to be taken as controlling because of the sharp difference in the setting in which the argument was there raised. The indictment in *Randolph* (drawn in the early 1930's) charged felony-murder by setting forth with specificity the elements of both murder and robbery. Some 20 years later the defendant attacked the indictment, claiming it was fatally defective because it alleged two separate and distinct offenses in a single count. In other words, the contention was that the indictment had alleged too much, not that it had alleged too little. When the above-quoted language from *Randolph* is considered in this context it may be seen that it does not call for a blanket application to and declaration of invalidity of the indictment in this case. We find more germane to the circumstances of this case other language of the court in *Randolph*:

> "When a robbery is committed with a felonious intent and death ensues the offense is deemed and adjudged to be murder. [Citations.] In such cases the indictment should allege the robbery to supply the necessary elements to make the killing murder. [Citation.] Where the obvious purpose of alleging the elements of the crime of robbery is to show that death resulted from the perpetration of that felony, the indictment is not an indictment for the crime of robbery but for murder only, and the count is not duplicitous." *People v. Randolph* (1954), 2 Ill. 2d 87, 89, 116 N.E.2d 876, 877.

Although in our opinion it is unnecessary to rely on it, we note parenthetically the following from the Committee Comments to section 111—3, contained in the Smith-Hurd statutes:

> "It is clear that many of the old pleading technicalities are no

longer required under the existing law. Centuries ago, the punishment was severe and the courts attempted to compensate by strictly construing the pleading requirements. The main requirement today is simplicity in order that the accused will understand the charge against him." Ill. Ann. Stat., ch. 38, par. 111—3, Committee Comments, at 344 (Smith-Hurd 1970).

■■ The indictment upon which the prosecution of defendants was based charged that a murder was committed by defendants while they were committing the forcible felony of burglary. The defendants do not contend that the crime of murder was improperly stated. And while it is true, as defendants argue, that the particular elements of the burglary were not set forth, the indictment did, nevertheless, cite the section of the Criminal Code which describes and provides punishment for the crime of burglary. The particular elements which constituted the burglary in this case were unnecessary in the indictment since the defendants were not being prosecuted for burglary. The only offense charged was murder. The allusion to the burglary was necessary to allege that the murder was one committed during the course of a felony. The indictment alleged that the victim of the murder was Cary Lee Reischauer. Obviously, at whatever location that crime was committed, the victim could suffer the consequences but one time, a situation that effectively bars a reprosecution for another murder of Cary Lee Reischauer at another location or in connection with the commission of another felony.

Our conclusion is buttressed by the fact that the State furnished defendants with a bill of particulars which became a part of the record and described the burglary and the acts which caused the victim's death. This well served to advise defendants of the nature of the charges made against them, enabled them to prepare a defense and could be used to plead conviction or acquittal in bar of another prosecution. We recognize that a bill of particulars will not cure a void indictment (*People v. Tyler* (1977), 45 Ill. App. 3d 111, 359 N.E.2d 240), but this case does not involve a void indictment. As our supreme court stated in *People v. Gilmore*:

> "This court, in cases too numerous to list, has consistently held that due process requires that an indictment or information must apprise the defendant of the precise offense charged with sufficient specificity to enable him to prepare his defense and allow the pleading of the judgment as a bar to future prosecution arising out of the same conduct.
>
> ✽ ✽ ✽
>
> ✽ ✽ ✽ As we said in *People v. Jones*, 53 Ill. 2d 460, 464, 'the time when an indictment defined the limits of jeopardy has passed and a prior prosecution on the same facts may be proved by resort to

the record. [Citation.]' 'Resort to the record' in these cases shows clearly that the offenses of which defendants were convicted are specifically identifiable and can be pleaded in bar of subsequent prosecutions." *People v. Gilmore* (1976), 63 Ill. 2d 23, 28-31, 344 N.E.2d 456, 460-61.

The reasoning and result we reach in defendants' attack on the sufficiency of the indictment, we feel, are consonant with those cases which hold that an indictment which charges attempt or conspiracy need not set forth all the elements of the inchoate offense. See *People v. Woodward* (1973), 55 Ill. 2d 134, 302 N.E.2d 62; *People v. Williams* (1972), 52 Ill. 2d 455, 288 N.E.2d 406.

For the reasons stated, we hold that the indictments are in compliance with the requirements mandated by section 111—3 of the Code of Criminal Procedure.

Next, defendants contend that they were denied their right to effective assistance of counsel where defense counsel Robert Butler, who represented both of them, also represented David Beaver and Willie Jeffrey on charges arising out of the same offense. David Beaver and Willie Jeffrey were key State's witnesses at the instant trial. Defendants maintain that while they purported to waive any conflict of interest on Butler's part, the nature of the conflict was not adequately explained to them. Defendant Jeffrey maintains in his brief that the court "should not have permitted such representation under any circumstance." The State responds that not only was the conflict waived but that, under the circumstances, it would have been reversible error to have denied defendants the representation of Butler as they were entitled to counsel of their own choosing. Alternatively, the State concedes that this court's holding in *People v. Drysdale* (1977), 51 Ill. App. 3d 667, 366 N.E.2d 394, controls this case and requests that this court overrule it.

Additional facts are pertinent. Prior to trial the State filed a written motion to substitute another attorney for attorney Robert Butler as Nailer Jeffrey's counsel, citing Butler's prior representation of David Beaver and Willie Jeffrey and quoting from the holding in *Drysdale*. The State's motion was opposed by Butler in pretrial argument. Butler maintained that he had "discussed this matter at length" with Nailer Jeffrey. The court then questioned Nailer Jeffrey, who stated that he realized that David and Willie would both testify for the State. The court explained that Butler had represented David and Willie and had obtained information from them regarding this case. The following colloquy ensued between the judge and Nailer Jeffrey:

"Q. * * * there would appear to be a conflict between what he did for them and what he is trying to do for you now. Do you

understand that? A conflict in the law between representing a person at one time and the other person at another time. Do you understand that?

A. Yes. I do.

Q. Are you aware of this?

A. I am very much aware of it.

Q. I don't think there is any question that a conflict exists. The question is whether the conflict is of such a degree even if the defendant before me is aware of it as to raise as the court says a possibility of an unwillingness or inability to effectively represent Mr. Nailer. Are—you are fully aware of what happened in the past with regard to the two young men and what Mr. Butler did?

A. The thirty some days that I was here, I didn't know anything about the thing until then. The only thing they didn't talk to me about it.

Q. I am not asking you that. You are aware that Mr. Butler represented them?

A. Yes. I called Mr. Butler.

Q. And then when you were arrested on this charge you called Mr. Butler?

A. Yes, I did.

Q. Do you understand that there might be some problem with Mr. Butler representing you because you he represented two witnesses against you in the same case. Do you understand that?

A. Yes. I am willing to face the problem.

Q. You understand it fully and you are willing to accept that.

A. I am more than willing.

Q. Do you think Mr. Butler is the best person to represent you?

A. I want Mr. Butler because he knows more about the case than anyone else and the fact that I have in my pocket and the fact that—

Q. I am not wanting to go into that. I am not asking you to expand on your answer and I am not trying the case right now. I am trying to solve a very difficult problem that has been raised. Do you understand that?

A. Yes."

The judge stated his belief that there was a conflict of interest on Butler's part but "with some reluctance" denied the State's motion. Then Bernard Paul, attorney for Gary Brown, filed his written motion to withdraw, stating as grounds Brown's request that he do so.

At the hearing on Paul's motion, defendant Gary Brown testified that "I have gotten a different lawyer, and he knows more about the case than Mr. Paul does." Brown testified that he first met with Butler on his

(Brown's) own request and that he realized that Butler had already represented two of the State's witnesses. Gary Brown explained that "I just figured it would be to my best interests to have Mr. Butler. I feel like maybe—nothing against Mr. Paul. I feel that he could do me right, but it seems to me that every right that you are supposed to have I have not had. I have been turned down for bond twice. I have a wife and three children. * * * I want Mr. Butler for my lawyer."

Two days later, another hearing was had in the presence of Gary Brown, Nailer Jeffrey and Robert Butler. The judge explained to both defendants that they had the right to be represented by attorneys of their own choosing as well as the right to an attorney who was free "to represent the defendant to the best of his ability without any conflict with any other person." The judge explained that Butler had previously represented Willie and David, who would be witnesses for the State at trial, and that defendants' attorneys would have to cross-examine them. The judge also questioned Butler, who was of the opinion that he could represent both defendants. Asked whether he had any objection to Butler representing Gary Brown, Nailer Jeffrey replied: "No, sir, I want him to represent both of us." Gary Brown stated in response to questions that he understood he could have a separate attorney but preferred Butler. The judge admonished both defendants that he did not approve of their decision but would permit it if they were aware of the possible consequences.

■■ It is true that an attorney should not represent conflicting interests. (*People v. Walsh* (1963), 28 Ill. 2d 405, 192 N.E.2d 843.) However, the right to counsel guaranteed under the Federal Constitution includes the right to be represented by counsel of one's own choice. (*People v. Payne* (1970), 46 Ill. 2d 585, 264 N.E.2d 167.) It is not the duty of the court to advise or exercise any authority or control over the selection of counsel by a defendant who is able to, and does, employ counsel of his own choice. (*People v. Potts* (1974), 17 Ill. App. 3d 867, 309 N.E.2d 35.) The accused has the unquestioned privilege to waive his right to counsel free from conflicting interests. (*People v. Johnson* (1979), 75 Ill. 2d 180, 387 N.E.2d 688.) The question before this court is whether an effective waiver was made by either of the defendants or both. While the right to effective assistance of counsel can be waived, such a waiver must be knowingly and intelligently made and should not be casually inferred. *People v. Robinson* (1980), 79 Ill. 2d 147, 402 N.E.2d 157.

■■ We are of the opinion that both defendants effectively waived the conflict issue prior to trial. Arguably, the nature of the conflict of interest could have been more thoroughly explained to defendants on the record. Arguably, lay defendants could never fully appreciate that conflict. However, we are more persuaded by the fact that both defendants clung

to one specific and articulated reason why they wanted Butler as their attorney, *i.e.*, his superior knowledge of the case. We cannot say that defendants' decision was not a good one, since Butler intensively cross-examined each accomplice witness and launched a detailed attack on those witnesses' credibility in closing argument. Also significant in our view was the fact that defendants persisted in their choice despite the judge's express advice that they not do so. Also significant with respect to Gary Brown was the presence of a viable alternative choice, attorney Bernard Paul, who was already representing him and whom the judge described as a more experienced criminal attorney. We cannot conclude on this record that the trial judge's acceptance of the purported waivers was erroneous.

The cases cited by the parties for comparison on the waiver issue have not been particularly helpful, since none involved the accused's implementation of a conscious strategy as in the instant case. In *People v. Robinson*, where the supreme court held the conflict issue waived, the admonishments by the trial court were at best marginally better than those in the instant case. However, in our view the fact that both defendants asserted their preference for the attorney more conversant with the operative facts makes the instant cause a stronger example of waiver than *Robinson*. In view of our conclusion that the conflicts issue was waived, we do not consider whether *Drysdale* should be overruled as urged by the State.

The final issue remaining in this appeal is defendant Gary Brown's contention that the instant jury instructions were fatally defective. The instruction in question, tendered by the State, was given as follows:

> "A person commits the crime of murder who kills an individual if, in performing the acts which cause the death, he is attempting to commit or is committing the crime of Burglary." Illinois Pattern Jury Instructions, Criminal, No. 7.01 (1968).

■■ Defendant maintains that this instruction was fatally defective because it did not include the words "without legal justification." Defendant made no objection to that instruction at the instruction conference, and the issue was not raised in defendants' motion for new trial. Therefore, we deem the issue waived. Defendant may not complain of defects in instructions to which he has agreed or to which he has acquiesced. (*People v. Riley* (1964), 31 Ill. 2d 490, 202 N.E.2d 531.) To raise an issue concerning jury instructions on appeal the appellant must show the reviewing court that he raised that issue at the instruction conference. Otherwise, he is barred from raising it on review. (*Brown v. Decatur Memorial Hospital* (1980), 83 Ill. 2d 344, 415 N.E.2d 337.) Since there was no evidence of lawful justification for defendants' actions, we do not deem this an issue of "plain error" affecting "substantial rights" review-

able under Supreme Court Rule 615(a) (Ill. Rev. Stat. 1979, ch. 110A, par. 615(a)), the defect urged having had no practical effect.

The judgment of the circuit court of Jackson County is affirmed.

Affirmed.

KASSERMAN, P. J.* and KARNS, J., concur.

---

* Presiding Justice Kasserman replaced Justice Spomer on the panel, as Justice Spomer retired from the bench after the case was taken under advisement.