2016 IL App (1st) 131944

FIRST DIVISION
AUGUST 22, 2016

No. 1-13-1944

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 11 CR 3485 |
| | ) | |
| ROBERT CAREY, | ) | Honorable |
| | ) | Matthew E. Coghlan, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.
Justices Connors and Harris concurred in the judgment.

**OPINION**

¶ 1    Defendant, Robert Carey, was tried by a jury, found guilty of first degree felony murder while armed with a firearm, and sentenced to 25 years' imprisonment for the murder and an additional 15 years for the firearm sentencing enhancement. Prior to the trial, the State had *nolle prosequied* three additional charges in the indictment against defendant: one count of attempt armed robbery while armed with a firearm (720 ILCS 5/18-2(a)(2) (West 2010)) (count II) and two counts of unlawful use or possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2010)) (counts III and IV).

¶ 2    In his appeal, defendant makes the following three arguments: (1) the circuit court erred in finding him fit to stand trial, given that he suffered from amnesia and had no recollection of the incident giving rise to the felony murder charge against him; (2) the State failed to prove beyond a reasonable doubt that he had the intent to commit armed robbery and that he took a

substantial step toward the commission of the crime; and (3) the 15-year firearm enhancement should be stricken or vacated from his sentence because the State failed to satisfy the procedural requirements for notifying a defendant of its intent to seek the enhanced term. We filed our original decision in this matter on November 9, 2015, in which we affirmed defendant's conviction for first degree felony murder and vacated the 15-year sentencing enhancement which was based on his possession of a firearm.

¶ 3    Following our decision, both parties filed petitions for rehearing. In its petition, the State argues that the firearm sentencing enhancement should not be vacated because defendant was not prejudiced in the preparation of his defense. In defendant's petition, he contends that this court misapplied the applicable law and relevant facts in concluding that he was fit to stand trial; and further in finding that there was sufficient evidence to convict him of attempt armed robbery. Additionally, for the first time, defendant argues that the felony murder conviction must be vacated because he was prejudiced by an indictment that did not specify which version of attempt armed robbery the State sought to use as the predicate offense for felony murder. We ordered the State to file a response to defendant's petition for rehearing, and for defendant to file a reply, specifically addressing the issue of whether the felony murder count of the indictment "apprised [defendant] of the offense charged with sufficient specificity to prepare his defense and allow pleading a resulting conviction as a bar to future prosecution arising out of the same conduct."

¶ 4    Following our review of the supplemental briefing, we granted both parties' petitions for rehearing and withdrew our original decision. This opinion now stands as our resolution of this matter. For the reasons that follow, we reverse defendant's conviction and remand to the circuit court for further proceedings consistent with this opinion.

¶ 5                              BACKGROUND

¶ 6    The undisputed facts are as follows. On the morning of January 28, 2011, defendant and his brother, Jimmy Townsend, attacked two armored truck guards working for Garda Cash Logistics (Garda): Julio Rodriguez and Derrick Beckwith. The guards arrived in an armored Garda truck at a Family Dollar store located at the corner of Chicago Avenue and Homan Avenue in Chicago. Beckwith drove the truck, and after pulling up to the entrance of the store, Rodriguez exited the truck and entered the store to collect the cash receipts for transfer while Beckwith stayed outside in the truck.

¶ 7    As Rodriguez exited the store holding a deposit bag filled with cash, defendant and Townsend ambushed him from two different directions. Townsend approached Rodriguez and pointed at him an object that appeared to Rodriguez to be a sawed-off shotgun, while Defendant approached Rodriguez from a different side with a handgun. Townsend yelled for defendant to shoot Rodriguez. Rodriguez shot Townsend four times with his service revolver and Townsend collapsed to the pavement from the gunshot wounds. Townsend threw his weapon to defendant, who then put Rodriguez in a chokehold. During his struggle with defendant, Rodriguez dropped the money bag, eventually broke free from defendant's grip, and ran toward the truck. By this time, Beckwith, who was still inside the truck, had opened the passenger-side door and drawn his firearm. He fired four shots at defendant. Two of the bullets struck defendant in the head—one directly in his eye—and he fell to the ground, where he remained until the police and paramedics arrived. Townsend died from the gunshot wounds to his chest. As a result of the head injuries he suffered from the shooting, defendant was in a coma for a period of time. When he awoke, defendant claimed that he had no memory of the shooting or anything that had happened during the week preceding the incident.

¶ 8    Prior to trial, defense counsel requested that defendant receive a behavioral clinical examination to determine his fitness to stand trial. This examination was completed in February 2012 by Dr. Eric Neu, a clinical psychologist, who found defendant fit to stand trial. Defense counsel then retained a clinical neuropsychologist, Dr. Robert Louis Heilbronner, to assess defendant's fitness. Dr. Heilbronner interviewed defendant and subjected him to two days of testing, then issued a psychological report on his findings. Following this, at the State's request, the court ordered an additional fitness examination to supplement the other reports. Dr. Nishad Nadkarni, a forensic psychiatrist for the Cook County circuit court, examined defendant in June 2012 and issued a letter indicating that he found defendant competent to stand trial. At the fitness hearing, the court heard argument from the parties as well as testimony from both Dr. Nadkarni and Dr. Heilbronner, and determined that defendant was fit to stand trial. The court concluded that while defendant did suffer "an impairment as to his ability to recollect and relate" the events surrounding the robbery incident, that single impairment did not render defendant unfit to stand trial. The court found that, based on the "totality of the evidence," the State had met its burden of establishing defendant's fitness.

¶ 9    The State brought a pretrial motion *in limine* to prohibit defense counsel from arguing that the handgun recovered from defendant at the crime scene had to be "operable" in order to qualify as a "firearm" under the Firearm Owners Identification Act (the FOID Act) (430 ILCS 65/1.1 (West 2010)). During the hearing on the motion, the State advised the court and defense counsel that the statutory offense at issue, attempted armed robbery under section 18-2(a)(2) of the Criminal Code of 1961 (Code) (720 ILCS 5/18-2(a)(2) (West 2010)), required proof of a firearm. The State indicated its intention to prove that defendant "was armed with a nickel-plated automatic handgun [that] was sufficient to qualify as a 'firearm' within the meaning of Section

1.1 of the FOID Act despite defendant's contention that it was inoperable." The court granted the motion, ruling that the defense was precluded from arguing that the gun was not a "firearm" however, the court indicated that it would permit the argument if the evidence showed that the gun fell within an exception to the statutory definition of a firearm.

¶ 10    Initially, the State charged defendant with four counts: first degree felony murder for causing the death of Townsend while committing a forcible felony, attempt armed robbery (720 ILCS 5/9-1(a)(3) (West 2010)) (count I); attempted armed robbery while armed with a firearm (720 ILCS 5/18-2(a)(2) (West 2010)) (count II); and two counts of unlawful use or possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2010)) (counts III and IV). Immediately before trial, the State *nolle prosequied* counts II, III, and IV, and proceeded solely on count I.

¶ 11    At trial, the State presented eyewitness testimony from the Garda security guards and three other witnesses who either saw or heard the confrontation. Those five witnesses presented a generally consistent account of the events of the morning of January 28, 2011. The State also provided testimony from the police officer who arrived at the scene, a medical examiner who reviewed Townsend's autopsy report, a forensic investigator, a firearm identification expert, and the detective assigned to investigate the shooting incident.

¶ 12    Larry Goodson, the forensics investigator, testified that when he and his team examined Townsend's weapon, they discovered that it was not, in fact, a sawed-off shotgun. Instead, it was a homemade object crudely designed to resemble a shotgun; the weapon consisted of two metal pipes fastened to a piece of wood with duct tape, with what appeared to be a brown household rag wrapped across one of the ends to act as a handle.

¶ 13    Forensic scientist Elizabeth Haley testified as an expert in firearm identification. She testified that the handgun defendant had been holding was a double-barreled .22 Derringer which

had been designed to fire live ammunition. Haley stated that when she attempted to load ammunition into the Derringer, she discovered an obstruction in the top barrel that prevented her from chambering a round. There was no such obstruction in the lower barrel. When she attempted to fire the weapon, the cartridge did not discharge. Upon further investigation, Haley learned that the firing pin had hit the cartridge but "not with enough force in order to set out the priming material." Haley concluded that the gun was inoperable in its current state.

¶ 14    Defendant testified on his own behalf. Although he had no memory of the incident, he remembered some of the circumstances preceding the shootout. Defendant testified that sometime in November or December 2010, Townsend told him that he wanted to "end his life" and desired to "go out in a hail of bullets." He recalled that the topic of suicide often came up during conversations with his brother. Defendant admitted that he had seen and even held the Derringer handgun multiple times before the date of the incident. He also recalled having seen the makeshift "shotgun" prior to the incident, as it was usually kept in the van that he and Townsend often drove. Finally, defendant acknowledged that it was possible that he and Townsend were trying to rob the armored truck on the date in question; however, he had no memory of the incident and could not say with any certainty whether that was what happened.

¶ 15    Following closing arguments, the trial court held a jury instruction conference. The State informed the court and defense counsel that it was seeking the firearm sentencing enhancement and tendered a firearm instruction. Defendant objected, arguing that he had received no notice of the State's intent to seek a sentencing enhancement, but the verdict form for the sentencing enhancement was given to the jury over defendant's objection. The jury subsequently found defendant guilty of first degree felony murder based on the predicate offense of attempted armed robbery while armed with a firearm. The trial court denied defendant's motion for a new trial and

sentenced him to 25 years' imprisonment for first degree felony murder, plus an additional 15-year term based on his possession of a firearm. Defendant's motion for reconsideration of the sentence was denied, and he timely appealed on June 5, 2013.

¶ 16    We have jurisdiction to consider this appeal pursuant to Illinois Supreme Court Rules 603 (eff. Feb. 6, 2013) and 606 (eff. Dec. 11, 2014).

¶ 17                                ANALYSIS

¶ 18    Defendant initially raises three issues on appeal. First, he contends that his felony murder conviction must be reversed because the State did not present sufficient evidence to prove him guilty beyond a reasonable doubt of the underlying forcible felony of attempted armed robbery. Second, he argues that the trial court improperly ruled him fit to stand trial, where he could not remember the events of January 28, 2011, and could not actively assist in his own defense. Third, he claims that the State failed to provide proper notification of its intent to seek a 15-year firearm sentencing enhancement and, therefore, that portion of his sentence should be stricken. In his petition for rehearing, in addition to asking this court to further consider his first two arguments, defendant raises for the first time the additional argument that he was prejudiced and his conviction must be vacated where the indictment failed to specify which predicate offense his felony murder charge was based on. Because we find the issue to be dispositive, we begin by addressing defendant's last argument.

¶ 19    Defendant argues that the charging instrument upon which he was convicted of first degree felony murder was deficient in its failure to specify which of Illinois' two attempted armed robbery offenses the State sought to prove as the predicate offense. Defendant asserts that, due to this deficiency, he was deprived of his due process right to be informed of the precise

offense charged, prejudiced in his ability to prepare a defense, and wrongfully convicted of an offense he was not charged with committing.

¶ 20    We first must comment on the fact that defendant did not raise this argument at trial, nor did he raise it in his initial appeal—rather, purportedly inspired by this court's reasoning in that decision, he raised it for the first time in his petition for rehearing of this court's decision dated November 9, 2015. Generally, points not argued in a party's appellate brief may not be raised for the first time in a petition for rehearing. Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013); see also *O'Hare International Bank v. Feddeler*, 16 Ill App. 3d 35, 39 (1973). However, the failure to charge an offense is a defect that may be attacked at any time. *People v. DiLorenzo*, 169 Ill. 2d 318, 321 (1996); *People v. Alvarado*, 301 Ill. App. 3d 1017, 1022 (1998) ("When a charging instrument fails to state an offense, this constitutes a defect implicating due process concerns, and the defective charge may be attacked at any time."). Therefore, this court may address defendant's argument regarding the sufficiency of the charging instrument.

¶ 21    A defendant has a "fundamental due process right to notice of the charges brought against him" and "may not be convicted of an offense he has not been charged with committing." *People v. Kolton*, 219 Ill. 2d 353, 359 (2006). This constitutional right to be adequately informed of the charged offense with sufficient specificity to form a defense "applies to the predicate felony in a count *** just as it does to a count charging the underlying felony alone." *People v. Hall*, 96 Ill. 2d 315, 319-20 (1982). Section 111-3(a) of the Code of Criminal Procedure of 1963 requires the charging instrument to include the name of the offense, the statutory provision allegedly violated, the nature and elements of the offense charged, the date and county where the offense was allegedly committed, and the name or description of the accused. 725 ILCS 5/111-3(a) (West 2010). When the sufficiency of charges is attacked for the first time in a pretrial motion,

the instrument must strictly comply with these requirements. *DiLorenzo*, 169 Ill. 2d at 321-22. When the charging instrument is attacked for the first time on appeal, as is the case here, the standard of review is "more liberal." *Id.* In this situation, the reviewing court uses a two-pronged test that was first set out in *People v. Pujoue*, 61 Ill. 2d 335 (1975). Rather than determine whether the indictment includes each necessary element of section 111-3(a), the *Pujoue* test requires the court to determine whether the defendant was "apprised *** of the precise offense charged with enough specificity to (1) allow preparation of his defense and (2) allow pleading a resulting conviction as a bar to future prosecution arising out of the same conduct." *DiLorenzo*, 169 Ill. 2d at 322 (citing *People v. Thingvold*, 145 Ill. 2d 441, 448 (1991); and *Pujoue*, 61 Ill. 2d at 339).

¶ 22 As we previously noted, it is undisputed here that the only charge on which the State proceeded to trial against defendant was the first degree felony murder charge under count I of the indictment. The remaining three counts were *nolle prosequied*. Count I against defendant alleged that:

> "on or about January 28, 2011 at and within the County of Cook,
>
> Robert Carey
>
> committed the offense of FIRST DEGREE MURDER
>
> in that HE, WITHOUT LAWFUL JUSTIFICATION, COMMITTED THE OFFENSE OF ATTEMPT ARMED ROBBERY, AND DURING THE COMMISSION OF THE OFFENSE, HE SET IN MOTION A CHAIN OF EVENTS THAT CAUSED THE DEATH OF JIMMY TOWNSEND
>
> IN VIOLATION OF CHAPTER 720 ACT 5 SECTION 9-1(a)(3) OF THE ILLINOIS COMPILED STATUTES 1992 AS AMENDED *** [.]"

Count I does not specify which version of the attempted armed robbery offense served as the predicate offense for the felony murder charge. Under Illinois law, there are two mutually exclusive types of armed robbery: (a) armed robbery "with a dangerous weapon other than a firearm" (720 ILCS 5/18-2(a)(1) (West 2010)), and (b) armed robbery "with a firearm" (720 ILCS 5/18-2(a)(2) (West 2010)). By distinguishing between these two methods of committing armed robbery, section 5/18-2(a) creates two "substantively distinct offenses." *People v. Washington*, 2012 IL 107993, ¶ 6; see also *People v. Barnett*, 2011 IL App (3d) 090721, ¶ 38 (noting that "the language of the current statute clearly demonstrates that a violation under section 18-2(a)(1) and one under section 18-2(a)(2) are mutually exclusive of each other"). Count I of the indictment in this case does not provide a statutory citation to the relevant provision, nor does it include any specific detail or other indication of which of these two offenses the State sought to prove at trial. Due to this ambiguity, we must conclude that the indictment was defective in its failure to adequately inform defendant of the charges brought against him with sufficient detail to prepare an adequate defense.

¶ 23    The State argues that it is unnecessary for the charging instrument to set forth the "particular elements" of attempted armed robbery because defendant was not being prosecuted for attempted armed robbery, but for felony murder. In support, the State cites *People v. Jeffrey*, 94 Ill. App. 3d 455 (1981), which involved a defendant who was tried on the charge of felony murder predicated on the felony of burglary. *Jeffrey*, 94 Ill. App. 3d at 461. The charging instrument stated that the defendant caused the victim's death "while committing the forcible felony of Burglary in violation of Chapter 38, Section 19-1, Illinois Revised Statute, 1975, as amended" but did not provide any further description of the alleged underlying offense. *Id.* The defendant challenged the sufficiency of the charging instrument in its failure to include the

elements of the predicate offense of burglary. *Id.* As the defendant first challenged the indictment in the trial court, the *Jeffrey* court considered the defendant's challenge under the more rigid requirements set forth in section 111-3. *Id.* at 463. Even under that higher standard, the court disagreed with the defendant's argument and found that the indictment was not deficient. *Id.* It reasoned that, because the defendant was being prosecuted for murder, not burglary, the precise elements that constituted burglary and unnecessary in the indictment. *Id.* at 464.

¶ 24    The *Jeffrey* court quoted *People v. Gilmore*, 63 Ill. 2d 23 (1976), to explain the standard it used to determine whether the charging instrument adequately described the predicate offense: " 'due process requires that an indictment or information must apprise the defendant of the precise offense charged with sufficient specificity to enable him to prepare his defense and allow the pleading of the judgment as a bar to future prosecution arising out of the same conduct.' " *Jeffrey*, 94 Ill. App. 3d at 464 (quoting *Gilmore*, 63 Ill. 2d at 28-29). Although this is the same standard that we apply here, there are key differences between the indictment in *Jeffrey* and count I in this case that prevent this court from reaching the same outcome. The first is that the *Jeffrey* indictment included the statutory citation for the predicate offense of burglary, which provided the defendant with notice of the specific predicate offense the State sought to prove at trial, even if the elements of that offense were not listed in the indictment itself. *Id.* at 461. Count I here includes no such citation. Also significant is the fact that the predicate offense in *Jeffrey* was burglary, which the Code defined as a single offense. Ill. Rev. Stat. 1975, ch. 38, ¶ 19-1. There was not more than one type of burglary, as there now are two types of armed robbery. Therefore, even without a statutory citation for burglary in the indictment, the defendant in *Jeffrey* would have nonetheless been sufficiently informed of the predicate offense charged because there was no ambiguity. In contrast, because the phrase "attempt armed robbery" could

11

refer to either of two mutually exclusive offenses, and because the indictment did not identify, through a statutory citation or in any other manner, which of the two offenses the State sought to prove at trial as the predicate offense for felony murder, defendant was not adequately informed of the charge against him "with sufficient specificity to prepare his defense," as due process requires.

¶ 25    In its briefs, the State acknowledges the importance of conforming with the statutory requirements of section 111-3 for its charge of felony murder but downplays the importance of precisely defining the predicate offense of felony murder, referring to its mention in the charging instrument as an "allusion" that was only "necessary to allege that the murder was one committed during the course of a felony." The State argues that all essential elements of felony murder were provided in the indictment and "any further facts defendant wished to have been alleged *** would have been surplusage." We cannot agree.

¶ 26    Sufficiently informing a defendant of the precise predicate offense charged directly implicates the sufficiency of the overall charge, and it is not enough to simply assert that "a felony" was being committed at the time of the murder. A defendant's due process right to be adequately informed of the charged offense with sufficient specificity to form a defense applies to a predicate offense just as if it were a count charging that underlying felony alone. *Hall*, 96 Ill. 2d at 319-20. The predicate offense is an essential element of the crime of felony murder, and each element of the predicate offense must be proved beyond a reasonable doubt. *People v. Pecina*, 132 Ill. App. 3d 948, 955 (1985). Where a defendant is not informed of the particular predicate offense in the charging instrument, the defendant is not adequately informed of all elements of the overall charge.

¶ 27   This is not to say that the manner of informing a defendant of the precise predicate offense must adhere to a specific format, or that the charging instrument must necessarily include the relevant statute in order to satisfy this requirement. This was established in *People v. Simmons*, 93 Ill. 2d 94 (1982), where the defendant was charged with, *inter alia*, the offense of armed violence based on the underlying felony of murder, which sustained the only valid conviction against the defendant by the time our supreme court reviewed the case.[1] *Simmons*, 93 Ill. 2d at 96-97. The charging instrument described the predicate offense as "murder, in that he shot and killed [the victim] with a gun, *knowing that such shooting with a gun created a strong probability of death or great bodily harm* to [the victim]." (Emphasis in original.) *Id.* at 100. The charge did not set out the statutory provision of the underlying felony, but the court found that such a citation was not necessary, as the charge must include the citation to only the charged offense, which in that case was armed violence. *Id.* However, the court did recognize the need for the defendant to be informed in some way of the precise predicate offense charged. As the court explained, "[t]he inclusion of the italicized language of the charge made it clear that murder under section 9-1(a)(2), rather than murder under section 9-1(a)(1), was the underlying felony in the charge of armed violence." *Id.* Although the charging instrument did not include a statutory citation for the predicate offense, it was nevertheless valid where it adequately informed the defendant of the precise predicate offense charged.

¶ 28   Even an "allusion" to the predicate offense may be sufficient if, by way of that allusion, the defendant can discern the precise offense the State asserts as the predicate offense. However,

---

[1]We note that, while this count served as the basis for the defendant's conviction, the conviction was for armed violence based on involuntary manslaughter. *Simmons*, 93 Ill. 2d at 96-97. The defendant also argued that the charging instrument was deficient for failing to state "which, if any, lesser offenses of murder were involved." *Id.* at 100. The court explained that "a charge of murder may serve as the basis for a conviction of any lesser included offense," including involuntary manslaughter, and upheld the sufficiency of the charging instrument. *Id.* These details do not affect our analysis of the relevant facts of this case.

that is not the case here, where there was nothing to indicate which of the two attempted armed robbery offenses served as the predicate offense.

¶ 29    The State further argues that, even if count I was deficient, the missing necessary elements were supplied by another count. In support of this proposition, the State cites *People v. Hall*, 96 Ill. 2d 315 (1982), wherein the defendant was charged and tried on two separate counts. Count II alleged the offense of armed violence, which was predicated on a violation of the Cannabis Control Act, which could be violated by the manufacture, delivery, possession with intent to deliver, or possession with intent to manufacture cannabis. *Hall*, 96 Ill. 2d at 319. The defendant argued that he did not receive adequate notice of the specific crime with which he was charged where count II did not specify which of the four acts the State alleged the defendant had committed. *Id.* However, count I, on which the defendant was also tried, was itself for the violation of the Cannabis Control Act, and it specified that the State sought to prove that the defendant *possessed cannabis with intent to deliver*. *Id.* at 317. Reasoning that "elements missing from one count of a multiple-count indictment or information may be supplied by another count," the court found that count II was not defective. *Id.* at 320. It explained that, "when one count of a multiple-count indictment states the purported predicate offense for another count with specificity, the latter count should not be held void unless *** the prosecutor indicates affirmatively that some other offense is the predicate or there remains a realistic possibility of prejudicial uncertainty as to the predicate offense in light of facts agreed upon or placed in dispute." *Id.* at 321. Finding no evidence to the contrary, the court did not "disturb the presumption" that the predicate offense identified in count II referred to the offense sufficiently explained in count I. *Id.* at 321-22.

¶ 30    The State asserts that, pursuant to *Hall*, "the indictment read as a whole in the case at bar," including count II, which charged defendant with the offense of attempted armed robbery with a firearm, adequately informed defendant of the felony murder charge against him. We do not agree, and *Hall* is inapplicable here. The State specifically declined to prosecute defendant for all other charges, including count II, when it *nolle prosequied* those charges prior to trial. By not pursuing count II, the State cannot rely on its contents to supplement a defective count I. Contrary to the State's assertion that defendant was "clearly informed of the nature of the charge" based on the contents of count II, the State's action of dropping that charge prior to trial effectively informed defendant that it was not willing to prosecute defendant for the charges therein contained. At best, it created an ambiguity as to which of the two attempted armed robbery offenses was asserted as the predicate offense in count I. It is not relevant, as the State argues, that at trial defendant presented *some kind* of a defense to murder. Nor does it matter whether the evidence and testimony the State presented at trial was tailored to only one of the attempted armed robbery offenses, ostensibly showing the State's intent to pursue one and not the other. Arguments based on hindsight do not address whether the indictment sufficiently informed defendant of the charged offense in the first instance, and nothing that may have occurred at trial could have remedied such a fundamental deficiency.

¶ 31    Nor did the State cure the defect in the indictment through its motion *in limine*, in which the facts regarding defendant's possession of a firearm during the forcible felony were included where the State sought to prohibit defense counsel from arguing that the handgun was inoperable and, therefore, not a firearm. This motion *in limine* was not intended as notification to defendant prior to trial that the State sought to pursue the specific offense of attempted armed robbery while armed with a firearm; rather, the clear purpose of the action was to bar the defense from

making certain arguments at trial. Moreover, at the time the State presented and argued its motion *in limine*, the counts in the indictment containing the firearm allegations had not yet been *nolle prosequied*. The State's defective indictment cannot, therefore, be cured in this fashion.

¶ 32     The remaining issue, then, is whether defendant is entitled to any relief. "An indictment challenged before trial must strictly comply with the pleading requirements of section 111-3." *People v. Mimes*, 2014 IL App (1st) 082747-B, ¶ 33 (citing *People v. Nash*, 173 Ill. 2d 423, 429 (1996)). "In contrast, when an indictment is attacked for the first time posttrial, a defendant must show that he was prejudiced in the preparation of his defense." *Mimes*, 2014 IL App (1st) 082747-B, ¶ 33 (citing *People v. Davis*, 217 Ill. 2d 472, 479 (2005)). Accordingly, in order to grant relief, we must find that defendant was prejudiced in the preparation of his defense by the State's failure to inform him of which attempted armed robbery offense served as the predicate offense for felony murder.

¶ 33     The offense of armed robbery may be established by evidence that defendant was either "armed with a dangerous weapon other than a firearm" or that he was "armed with a firearm." 720 ILCS 5/18-2(a)(1), (2) (West 2010). Because the indictment lacked any reference to either subsection 18-2(a)(1) or subsection 18-2(a)(2), the State was effectively free to proceed at trial under *either* theory. Indeed, the prosecution elicited testimony to establish that, during defendant's struggle with the armed guard, he *swung a metal-and-wood weapon* that resembled a double-barreled sawed-off shotgun at the guard. By leaving open the dangerous weapon theory, the State protected its ability to convict defendant even if the court found that the .22 Derringer was not a firearm.

¶ 34     As the *Hall* court explained, the constitutional requirement that an indictment apprise a defendant of the precise offense charged "protects the defendant against being forced to

16

speculate as to the nature or elements of the underlying offense, thus spreading his resources thin, attempting to rebut all of the possibilities, while the prosecutor merely focuses on the most promising alternative and builds his case around that." *Hall*, 96 Ill. 2d at 320. Under these circumstances, we conclude that defendant was prejudiced by the State leaving open its ability to convict him using either of the attempted armed robbery offenses as the predicate offense for felony murder.

¶ 35    We further note that that "[o]ur supreme court has held that '\*\*\* the double jeopardy clause does not preclude retrial of a defendant whose conviction has been set aside because of an error in the proceedings leading to the conviction.' " *People v. Smith*, 2015 IL App (1st) 122306, ¶ 46 (quoting *People v. Olivera*, 164 Ill. 2d 382, 393 (1995)); see also *People v. Bailey*, 31 Ill. App. 3d 1045 (1975) (finding that the State may reindict and prosecute defendant on the same grounds on which he was previously prosecuted and convicted where the original conviction was reversed due to being founded upon a void indictment). Therefore, given the circumstances, we find it appropriate to remand this case to the circuit court.

¶ 36                                    CONCLUSION

¶ 37    For the foregoing reasons, the judgment of the Cook County circuit court is reversed, and the case is remanded to the circuit court for further proceedings consistent with this opinion. As a result of our disposition of this case, we need not, and do not address defendant's remaining arguments on appeal regarding his fitness to stand trial, the sufficiency of evidence for the offense of attempted armed robbery, and notification of the 15-year firearm sentencing enhancement.

¶ 38    Reversed and remanded.