# Illinois Official Reports

## Supreme Court

**People v. Carey, 2018 IL 121371**

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ROBERT CAREY, Appellee. |
| Docket No. | 121371 |
| Filed | January 19, 2018 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Matthew E. Coghlan, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Springfield, and Anita M. Alvarez, State's Attorney, of Chicago (David L. Franklin, Solicitor General, and Michael M. Glick and Michael L. Cebula, Assistant Attorneys General, of counsel), for the People.<br><br>Michael J. Pelletier, State Appellate Defender, Patricia Mysza, Deputy Defender, and Manuel S. Serritos, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellee. |

Justices                    JUSTICE FREEMAN delivered the judgment of the court, with opinion.

Chief Justice Karmeier and Justices Thomas, Kilbride, Garman, Burke, and Theis concurred in the judgment and opinion.

**OPINION**

¶ 1    Following a jury trial in the circuit court of Cook County, defendant, Robert Carey, was convicted of first degree felony murder predicated on attempted armed robbery while armed with a firearm (720 ILCS 5/9-1(a)(3) (West 2010)). The appellate court reversed defendant's conviction, holding that the indictment failed to specify the predicate offense to the prejudice of defendant. 2016 IL App (1st) 131944. This court allowed the State's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Mar. 15, 2016). We now reverse the judgment of the appellate court and remand the cause to that court for further proceedings.

¶ 2                                I. BACKGROUND

¶ 3    On January 28, 2011, defendant and his brother, Jimmy Townsend, ambushed two armored truck guards employed by Garda Cash Logistics (Garda). Defendant was shot twice in the head during the attack, and Townsend died as a result of multiple gunshot wounds to his chest. Defendant was charged by indictment with first degree felony murder based on attempted armed robbery (count I) (720 ILCS 5/9-1(a)(3) (West 2010)). He was also charged with attempted armed robbery while armed with a firearm (count II) (*id.* §§ 8-4, 18-2(a)(2)) and with unlawful use or possession of a weapon by a felon based on his possession of a firearm (counts III and IV) (*id.* § 24-1.1(a)). On March 18, 2011, defendant was arraigned on all four counts.

¶ 4    Prior to trial, defendant underwent multiple examinations to determine his fitness to stand trial in light of his head injuries. Based on the results of those examinations, the circuit court found defendant fit to stand trial even though his ability to recollect and relate the events surrounding the shooting incident was impaired.

¶ 5    The State filed a motion *in limine* requesting that defendant be precluded from arguing that the handgun found in defendant's possession at the scene must be in "operable" condition in order to qualify as a "firearm" under the Firearm Owners Identification Card Act (FOID Act) (430 ILCS 65/1.1 (West 2010)). During the hearing on the motion, the prosecutor advised the court and defense counsel that possession of a firearm was an element of the predicate offense charged in count I, which was attempted armed robbery under section 18-2(a)(2) of the Criminal Code of 1961 (Criminal Code) (720 ILCS 5/18-2(a)(2) (West 2010)). The prosecutor further indicated that the State intended to prove that defendant was armed with an automatic handgun that qualified as a "firearm" under the FOID Act despite defendant's contention that the gun was inoperable. The court granted the State's motion but also indicated that defendant could argue that the handgun fell within an exception to the statutory definition of a "firearm" if the evidence supported such an argument.

¶ 6        On January 29, 2013, immediately before jury selection, the State moved for entry of a *nolle prosequi* on the charges of attempted armed robbery and unlawful use or possession of a weapon by a felon alleged in counts II, III, and IV. The trial court granted the State's motion, and defendant was tried before a jury on the charge of felony murder alleged in count I.

¶ 7        At trial, which commenced the following day, the State presented eyewitness testimony from the two armored truck guards, Julio Rodriguez and Derrick Beckwith, and from three other witnesses who were in the vicinity and either saw or heard the attack. The State also introduced testimony from the responding police officer, a medical examiner who reviewed Townsend's autopsy report, a forensic investigator, a firearm identification expert, and the detective assigned to investigate the incident.

¶ 8        The State's evidence reflected the following relevant facts. On the morning of January 28, 2011, the two armored truck guards, Rodriguez and Beckwith, were assigned to collect cash receipts from a Family Dollar store located at the corner of Chicago and Homan Avenues in Chicago. Rodriguez went into the store while Beckwith remained in the truck. When Rodriguez came outside, he was holding a deposit bag containing the store's cash receipts. Defendant and Townsend simultaneously approached him from separate positions. As Townsend advanced toward Rodriguez, he was aiming an object that appeared to be a sawed-off shotgun. Defendant, who had a handgun in his possession, approached Rodriguez from a different direction. After Townsend yelled for defendant to shoot, Rodriguez shot Townsend four times with his service revolver. Townsend collapsed on the pavement and threw the object he was holding to defendant, who put Rodriguez in a choke hold. Townsend ultimately died from the gunshot wounds to his chest.

¶ 9        During the struggle, Rodriguez dropped the money bag, broke free from defendant, and ran toward the truck. Beckwith then fired four shots at defendant through the open passenger-side door of the truck. Two bullets struck defendant in the head, one of which hit him directly in his right eye. Defendant fell to the ground and remained there until the police and paramedics arrived. As a result of the head injuries he suffered from the shooting, defendant was in a coma for a period of time. When he regained consciousness, defendant stated that he had no memory of the shooting or of anything that had happened during the week preceding the incident.

¶ 10       Upon examination, the item that Townsend had aimed at Rodriguez was found to be a homemade object fashioned to resemble a sawed-off shotgun. The object consisted of two metal pipes fastened to a piece of wood with duct tape, with a brown rag wrapped across one of the ends to serve as a handle.

¶ 11       The handgun found with defendant was subjected to forensic testing, which revealed that it was an unloaded double-barreled .22-caliber derringer designed to fire live ammunition. An obstruction in the upper barrel prevented placement of a round in that chamber, but the lower barrel was not obstructed. Multiple attempts to test-fire the derringer demonstrated that its firing pin did not strike with enough force to cause a cartridge in the lower barrel to discharge. The State's expert in firearm identification concluded that the handgun was inoperable in its current state.

¶ 12       In defense, defendant testified that he had no memory of the incident, but he could recall some of the circumstances that preceded it. Defendant recalled that, sometime in November or December 2010, Townsend said that he wanted to "end his life" and desired to "go out in a hail of bullets." Defendant also recalled that the topic of suicide often came up during

conversations with his brother. In addition, defendant admitted that he had seen and held the derringer handgun multiple times prior to the incident, and he remembered seeing the makeshift "shotgun" because it was usually kept in the van that he and Townsend often drove. Finally, defendant acknowledged that it was possible that he and Townsend were trying to rob the armored truck on the day of the shooting. However, because he had no memory of the incident, defendant could not say with certainty whether that was the case.

¶ 13     During the jury instruction conference, the prosecutor advised that the State was seeking imposition of the firearm sentencing enhancement and tendered a corresponding instruction. Defense counsel objected, arguing that the State had not provided notice of its intent to seek an enhanced sentence. The circuit court issued the instruction and sentence-enhancement verdict form over defendant's objection.

¶ 14     The jury found defendant guilty of first degree murder. The jury separately found that defendant committed the offense while armed with a firearm. The trial court denied defendant's motion for a new trial, sentenced him to 25 years' imprisonment, and also imposed an additional 15-year term based on his possession of a firearm.

¶ 15     On appeal, defendant asserted that he was not proven guilty beyond a reasonable doubt because the evidence of the predicate offense of attempted armed robbery with a firearm was insufficient. In particular, he claimed that the State failed to prove his intent to rob the armored truck guards and also failed to prove that the inoperable derringer qualified as a "firearm." Defendant further argued that the trial court erred in ruling that he was fit to stand trial and in ruling that the State was entitled to seek the 15-year firearm sentencing enhancement. In addition, defendant contended that he was prejudiced in the preparation of his defense where the indictment failed to specify the offense that formed the predicate offense for the charge of felony murder.[1]

¶ 16     The appellate court reversed defendant's conviction for felony murder on the ground that the indictment failed to specify the predicate offense to the prejudice of defendant. 2016 IL App (1st) 131944, ¶¶ 22-37. The appellate court reasoned that count I of the indictment was defective because it did not identify which of the two attempted armed robbery offenses served as the predicate for the felony murder charge. *Id.* ¶ 22. Based on that defect, the appellate court concluded that the indictment failed to adequately inform defendant of the charges against him with sufficient detail to allow preparation of an adequate defense. *Id.* ¶¶ 22, 24, 28, 33-34. In addition, the appellate court held that the defect in count I was not cured by reference to the other charges alleged in counts II, III, and IV or to the assertions in the State's motion *in limine*. *Id.* ¶¶ 30-31. Because the appellate court found the insufficiency of the indictment issue to be dispositive, it did not address defendant's remaining arguments. *Id.* ¶¶ 18, 37.

¶ 17     The State appeals to this court. Additional pertinent background will be discussed in the context of our analysis of the issues.

---

[1]This argument was presented in a petition for rehearing after the appellate court issued an unpublished decision affirming defendant's conviction, which was later withdrawn.

¶ 18                                    II. ANALYSIS

¶ 19        The State assigns error to the appellate court's reversal of defendant's conviction of first degree felony murder. The State disagrees with the appellate court's holding that the indictment failed to specify the predicate offense of attempted armed robbery to the prejudice of defendant. The State contends that the indictment sufficiently informed defendant of the charges brought against him. The sufficiency of a charging instrument is a question of law subject to *de novo* review. See *People v. Rowell*, 229 Ill. 2d 82, 92 (2008).

¶ 20        A criminal defendant has a fundamental right to be informed of the nature and cause of criminal accusations made against him. *People v. Nash*, 173 Ill. 2d 423, 428 (1996) (citing U.S. Const., amend. VI; Ill. Const. 1970, art. I, § 8); *People v. Meyers*, 158 Ill. 2d 46, 51 (1994) (same). In Illinois, this constitutional right is implemented by section 111-3 of the Code of Criminal Procedure of 1963 (725 ILCS 5/111-3 (West 2010)). Section 111-3(a) imposes specific pleading requirements for criminal charges. *Nash*, 173 Ill. 2d at 428-29; *Meyers*, 158 Ill. 2d at 51. These principles also apply to the predicate or underlying offense of a charged crime. This rule "protects the defendant against being forced to speculate as to the nature or elements of the underlying offense, thus spreading his resources thin, attempting to rebut all of the possibilities, while the prosecutor merely focuses on the most promising alternative and builds his case around that." *People v. Hall*, 96 Ill. 2d 315, 320 (1982).

¶ 21        The timing of a challenge to a charging instrument is significant in determining whether a defendant is entitled to reversal of his or her conviction based on charging instrument error. *Rowell*, 229 Ill. 2d at 93; *People v. Benitez*, 169 Ill. 2d 245, 257 (1996). If an indictment or information is challenged before trial in a pretrial motion, the charging instrument must strictly comply with the requirements in section 111-3(a). *Rowell*, 229 Ill. 2d at 93 (and cases cited therein); *People v. Thingvold*, 145 Ill. 2d 441, 448 (1991).

¶ 22        In contrast, while we do not approve of any failure to strictly comply with the clear requirements of section 111-3(a), the sufficiency of a charging instrument attacked for the first time on appeal is not determined by strict compliance with the statute but rather "by a different standard." *People v. Pujoue*, 61 Ill. 2d 335, 339 (1975); see *People v. Gilmore*, 63 Ill. 2d 23, 29 (1976). When attacked for the first time on appeal, a charging instrument is sufficient if it notified the defendant of the precise offense charged with enough specificity to allow the defendant to (1) prepare his or her defense and (2) plead a resulting conviction as a bar to future prosecution arising out of the same conduct. *People v. DiLorenzo*, 169 Ill. 2d 318, 322 (1996) (collecting cases). "In other words, the appellate court should consider whether the defect in the information or indictment prejudiced the defendant in preparing his defense." *Thingvold*, 145 Ill. 2d at 448; accord *Rowell*, 229 Ill. 2d at 93; *People v. Phillips*, 215 Ill. 2d 554, 562 (2005). In making this determination, the reviewing court may resort to the record. *DiLorenzo*, 169 Ill. 2d at 324. "Thus, the question is whether, in light of the facts of record, the indictment was so imprecise as to prejudice defendant's ability to prepare a defense." *Phillips*, 215 Ill. 2d at 562. If the reviewing court cannot say that the charging instrument error inhibited the defendant in the preparation of his or her defense, then the court cannot conclude that the defendant suffered any prejudice. See *People v. Cuadrado*, 214 Ill. 2d 79, 88 (2005).

¶ 23        The State contests the appellate court's conclusion that the indictment did not sufficiently inform defendant of the felony murder charge "for two independent reasons: (1) Count I fully informed defendant of the murder charge; and (2) even if Count I were deficient, read as a

whole the indictment fully informed defendant of the murder charge." We initially consider the State's second argument.

¶ 24 Count I alleged that on or about January 28, 2011, within Cook County, defendant "committed the offense of first degree murder in that he, without lawful justification, committed the offense of attempt armed robbery, and during the commission of the offense, he set in motion a chain of events that caused the death of Jimmy Townsend" in violation of section 9-1(a)(3) of the Criminal Code. As the appellate court noted, armed robbery can refer to either of two crimes: armed robbery "with a dangerous weapon other than a firearm" (720 ILCS 5/18-2(a)(1) (West 2010)) or armed robbery "with a firearm" (*id.* § 18-2(a)(2)). These two types of armed robbery are "substantively distinct offenses" (*People v. Washington*, 2012 IL 107993, ¶ 6) and "are mutually exclusive of each other" (*People v. Barnett*, 2011 IL App (3d) 090721, ¶ 38). The appellate court observed that count I did not provide either a statutory citation or factual allegations to indicate which type of armed robbery the State sought to prove at trial. Focusing exclusively on count I, the appellate court concluded that this deficiency rendered the indictment fatally insufficient. 2016 IL App (1st) 131944, ¶ 22.

¶ 25 "It is a well-established rule in Illinois that all counts of a multiple-count indictment should be read as a whole and that elements missing from one count of an indictment may be supplied by another count." *People v. Morris*, 135 Ill. 2d 540, 544 (1990). Accordingly, when one count of a multiple-count indictment states the alleged predicate offense for another count with specificity, the latter count should not be held void unless the indictment itself, or the prosecutor, affirmatively indicates that some other offense is the predicate or there remains a realistic possibility of prejudicial uncertainty as to the predicate offense in light of the facts. *Hall*, 96 Ill. 2d at 321.

¶ 26 In the case at bar, count II charged defendant with attempted armed robbery, specifically alleging that defendant used "a firearm" and citing section 18-2(a)(2) of the Criminal Code. 720 ILCS 5/18-2(a)(2) (West 2010). Counts III and IV each charged defendant with unlawful use or possession of a weapon by a felon (*id.* § 24-1.1(a)), specifically alleging that defendant possessed "a firearm." Therefore, the indictment, read as a whole, clearly informed defendant that the State intended to prove that he possessed a firearm at the time of the shooting.

¶ 27 However, without citation to authority, the appellate court refused to read the indictment as a whole. The court observed that the prosecutor entered a *nolle prosequi* on counts II, III, and IV and proceeded to trial only on count I. The court reasoned that the State's abandonment of those counts prior to trial effectively informed defendant that it was not willing to prosecute defendant for the charges pled therein. Thus, the court concluded that the State cannot refer to their contents to supplement the allegations in count I. 2016 IL App (1st) 131944, ¶ 30.

¶ 28 We disagree. The ultimate question remains whether, in light of the facts of record, the charging instrument was so imprecise as to prejudice defendant's ability to prepare a defense, which, if successful, would bar further prosecution arising out of the same conduct. See *Phillips*, 215 Ill. 2d at 562 (and cases cited therein). Here, the entry of the *nolle prosequi* on counts II, III, and IV did not occur until just prior to jury selection and one day before the trial commenced. Consequently, all four counts of the indictment, read as a whole (*Morris*, 135 Ill. 2d at 544), were available to inform defendant of the charges against him while he prepared for trial from the date of his arraignment in March 2011 until the commencement of trial in

January 2013. See, *e.g.*, *People v. McDavid*, 3 Ill. App. 3d 169, 171-72 (1971) (quoting *People v. Kamsler*, 67 Ill. App. 2d 33, 41 (1966)).

¶ 29    In addition, the fact that defendant possessed a "firearm" at the time of the attack was addressed on multiple occasions prior to and during trial. At two pretrial status hearings, the prosecutor and defense counsel advised the court that "the firearm" recovered from defendant at the scene was being tested to determine its capability of being fired. At the hearing on the motion *in limine*, the prosecutor specifically stated that "we will be proving that the [d]efendant was armed with a firearm from a legal sense. *** The attempt armed robbery section that is the predicate for the felony murder is [section] 18-2(a)(2), which requires proof of a firearm ***. It requires us to prove [a] firearm." During trial, defense counsel conducted extensive cross-examination of the occurrence witnesses, including questioning as to whether defendant was seen holding the gun. Defense counsel also cross-examined the State's firearm expert regarding the conclusion that the derringer was inoperable. In her closing argument, defense counsel emphasized the fact that the derringer could not be fired and highlighted the conflicting testimony on whether defendant was holding the gun at the time of the attack on the armored truck guards.

¶ 30    Therefore, the record before us affirmatively demonstrates that defendant was aware that the charge of felony murder was predicated on attempted armed robbery with a firearm and his attorney presented a defense to that charge. Also, given the jury's specific finding that defendant had possessed a firearm, the record establishes that defendant was convicted of committing the offense charged in count I while armed with a firearm. Neither defendant nor the appellate court has identified what other actions he could have taken if the allegations in count I had particularly referenced the use or possession of a firearm. See *People v. Davis*, 217 Ill. 2d 472, 479 (2005). In light of these circumstances, we cannot say that the lack of specificity in the felony murder charge prejudiced defendant in preparing a defense, nor do we believe the lack of specificity would hamper defendant's ability to plead his murder conviction as a bar to future prosecution arising out of the same conduct.

¶ 31    As a final matter, we note defendant argues that he was not proven guilty beyond a reasonable doubt because the evidence as to the predicate offense of attempted armed robbery with a firearm was insufficient. In support, defendant contends that the State failed to prove that the inoperable and unloaded .22-caliber derringer qualified as a "firearm." We observe, however, that the appellate court did not rule on the sufficiency of the evidence, or on either of the other two issues argued below, because it determined that the indictment issue was dispositive. 2016 IL App (1st) 131944, ¶¶ 18, 37. In light of our holding that defendant was not prejudiced by the lack of specificity in the indictment, we remand the cause to the appellate court for consideration of defendant's arguments challenging the sufficiency of the evidence against him, the ruling that he was fit to stand trial, and the determination that the State was entitled to seek the 15-year firearm sentencing enhancement. See, *e.g.*, *People v. Givens*, 237 Ill. 2d 311, 339 (2010).[2]

---

[2]Based on our disposition, we need not address the State's alternative argument that the appellate court erred in failing to affirm defendant's conviction by reducing the degree of the predicate felony to the lesser-included offense of attempted robbery. See, *e.g.*, *In re M.M.*, 2016 IL 119932, ¶ 31.

¶ 32                                    III. CONCLUSION

¶ 33        For the foregoing reasons, the judgment of the appellate court is reversed, and the cause is remanded to the appellate court for further proceedings.

¶ 34        Reversed and remanded.