2020 IL App (1st) 182307-U
No. 1-18-2307
Order filed December 28, 2020

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| | ) | Nos.   TE 186 670 |
| v. | ) | TE 186 671 |
| | ) | TE 186 672 |
| | ) | |
| | ) | Honorable |
| ANTHONY MORENO, | ) | Terrence McGuire and |
| | ) | Diann K. Marsalek, |
| Defendant-Appellant. | ) | Judges, presiding. |

_____

JUSTICE HYMAN delivered the judgment of the court.
Presiding Justice Walker and Justice Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's conviction for driving while under the influence of alcohol is affirmed over his contentions that (1) the evidence was insufficient to prove beyond a reasonable doubt that he was solely under the influence of alcohol, and (2) the State's failure to amend the complaint before trial to include a charge that he was under the influence of a combination of drugs and alcohol vitiated the trial and violated his statutory and constitutional rights.

¶ 2    Following a bench trial, Anthony Moreno was found guilty of driving while under the

influence of alcohol and negligent driving and sentenced to 24 months' conditional discharge on the driving under the influence count. On appeal, Moreno argues that (i) the evidence was insufficient to prove beyond a reasonable doubt that he was under the influence of only alcohol where there was also evidence that he took prescription medications, and (ii) the State's failure to amend the complaint before trial to include a charge that he was under the influence of a combination of drugs and alcohol vitiated the trial and violated his statutory and constitutional rights.

¶ 3    We affirm. That Moreno may have been under the influence of drugs does not foreclose a finding that he was under the influence of alcohol to such a degree that it rendered him incapable of driving safely. In addition, the charge informed Moreno precisely of what the State intended to prove—that he was under the influence of alcohol—and he was found guilty of exactly what he was charged with. There was no variance between the allegations in the complaint and the proof at trial.

¶ 4                                    Background

¶ 5    Only the common law record and report of proceedings for the March 9, 2017, trial are included in the record on appeal. The appellant has the burden to provide a record sufficient for our review of the issues raised on appeal. *People v. Hunt*, 234 Ill. 2d 49, 58 (2009). Accordingly, any deficiencies in the record will be held against Moreno. *Id.*

¶ 6    Moreno was charged with driving while under the influence of alcohol (625 ILCS 5/11-501(a)(2) (West Supp. 2013)) failure to produce a driver's license (625 ILCS 5/6-112 (West 2012)), and negligent driving (Chicago Municipal Code § 9-40-140 (amended May 9, 2007)).

¶ 7    At trial, Chicago police officer Randall Ivy testified that in his 23 years as an officer, he

received extensive training in field sobriety tests for driving under the influence (DUI) investigations. He estimated that he participated in 650 DUI investigations during his career.

¶ 8    Around 2:17 a.m. on September 2, 2013, at Cicero and Addison Avenues, Ivy saw a car revving its engine during a red traffic light, and repeatedly braking then "lung[ing]" towards another car until they were only inches apart. When the light changed, Ivy activated his emergency equipment and followed the still revving car until it stopped diagonally to a curb, with its rear partially blocking a traffic lane. In court, Ivy identified Moreno as the driver. There were two passengers.

¶ 9    Ivy was still in his marked squad car when Moreno got out and began yelling at Ivy, threatening him with an "alderman." Ivy approached and noticed Moreno had a "strong odor of alcoholic beverage on his breath, bloodshot, glassy eyes, [and] slurred, mumbled confused speech." Moreno refused to perform standardized field sobriety tests, threatening Ivy that the alderman "would have [Ivy's] a***." Ivy placed Moreno under arrest and took him to the station.

¶ 10    There, Moreno submitted to field sobriety tests. Ivy observed Moreno exhibited six clues of alcohol consumption during the "horizontal gaze nystagmus" test; four clues are required to show consumption. Ivy then conducted "divided attention" tests, which he stated require people "to do several different things at the same time which shows the [e]ffect that alcohol is having on them." Ivy observed six clues of impairment during the "walk and turn" test; two are required to show impairment. Ivy observed four clues of impairment during the "one leg stand" test; two are required to show impairment. Moreno showed no sign and never complained of injury or illness.

¶ 11    Ivy then read Moreno a document referred to as "Warnings to Motorists," which explains the consequences of submitting to or refusing chemical testing. While Ivy read, Moreno yelled

"bulls\*\*\*" at various times. During processing, Moreno's behavior switched from "lucid" to "enraged," and at some points he "exercis[ed], vigorously gritting his teeth and growling" before behaving "normal" again. Moreno refused to take a breathalyzer, telling Ivy to "blow him" and the alderman he mentioned earlier, and that Ivy's "job would be over shortly."

¶ 12     On September 18, 2013, Ivy attended an impound hearing regarding Moreno's car at which Moreno testified that he drank two beers on the night of his arrest. Moreno also testified that he took prescription anxiety and anti-depressant medications Lorazepam, Clonazepam, and another that Ivy could not recall. Moreno admitted at the hearing that the prescriptions cautioned against driving until knowing the medications' effects and against combining them with alcohol. Based on his experience, training, the outcome of the field sobriety tests, and his observations of Moreno, it was Ivy's opinion that Moreno was under the influence of alcohol that night.

¶ 13     On cross-examination, Ivy testified that Moreno completed the walk and turn test and never fell down but failed to keep his balance while Ivy explained the test to him. Moreno kept his balance for 30 seconds during the one leg stand test but was not steady. Defense counsel asked if Moreno's behavior indicated that he was a "screwball" or had a "problem" other than being under the influence of alcohol. Ivy acknowledged that he was concerned that Moreno "had some other problems." On redirect examination, Ivy testified that, despite completing the one leg stand test, at some point, Moreno put his foot down.

¶ 14     Moreno moved for a "finding of acquittal," arguing the evidence presented a question of whether Moreno was under the influence of alcohol or "just a screwball." The State argued that, although Moreno claimed at the impound hearing that he consumed medications, the driving under the influence of alcohol charge could be proved by any amount of alcohol causing impairment,

regardless of other contributing factors such tiredness or on medication. It conceded that there was no evidence regarding the failure to produce a driver's license charge. Noting the State "dismissed" that charge, the trial court denied the motion as to the other counts.

¶ 15    Moreno testified that around 7 p.m. on September 1, 2013, he went to a festival with friends, but did not consume alcohol. Around 8 or 9 p.m., Moreno left and went to a restaurant where he ate and drank two beers. He left at around 2 a.m. Moreno stated that the beers did not intoxicate him or put him under the influence or cause him to improperly operate his car. Rather, the car's various brake, engine, and transmission issues caused jerking.

¶ 16    While driving, Moreno saw a police car with its lights on and pulled over as soon as he could. Moreno denied parking diagonally, stating he parked perfectly as he always did. Police officers started yelling for Moreno to exit "the f*** vehicle" with his hands up. Moreno looked in the rearview mirror and saw three unmarked police cars and one marked car, and "[t]hey were all standing there with guns drawn." An additional car arrived and "he" drew a firearm. Moreno got out with his hands up and was handcuffed by "a [L]ieutenant Boyd" and placed in a squad. His passengers were searched and released.

¶ 17    On cross-examination, Moreno testified that despite his car's condition, he drove to various places that evening. Moreno ordered the first beer right away when he arrived at the restaurant and finished the second beer around 11:30 p.m. during his meal. He left the restaurant around 2 a.m. At Cicero and Irving Park, he took medications because he thought he would be home in 10 minutes. After seeing Ivy's emergency equipment activated, Moreno looked for a place to pull over and did so two minutes or two blocks later, his vehicle jerking as he drove.

¶ 18    The first time Moreno saw Ivy was when Ivy woke him at the police station, where Moreno

had fallen asleep for around 30 minutes or an hour. Moreno submitted to standardized field sobriety tests. He was then read the Warning to Motorists, which warned that, if he submitted to testing and was found to be over the legal limit or if he refused testing, his license could be suspended. He did refuse to submit to a test. On redirect examination, Moreno testified that he refused to submit to a breathalyzer because he was advised they are inaccurate.

¶ 19    The State recalled Ivy, who testified he did not observe Moreno's car jerk or stall when he followed it, and that it appeared to be working "fine." Moreno continued to drive about one and a half or two blocks after Ivy activated his emergency equipment. At the time Ivy pulled Moreno over, there were no other police cars with him. Because of Moreno's behavior, Ivy called for assistance, and other squads arrived several minutes later. Ivy did not recall whether he initially drew his weapon and denied that Moreno fell asleep at the police station.

¶ 20    On cross-examination, Ivy testified that the only indication that Moreno was under the influence of alcohol while was that he failed to stop when Ivy was behind him. Ivy did not know if other officers drew their firearms. Ivy was with Moreno in Ivy's car when Moreno was transported to the police station and with him the entire time he was in custody.

¶ 21    In closing, the State adopted its argument on the motion for a directed finding. It then argued that Moreno's testimony was not credible because he claimed that his car was unsafe yet consumed alcohol and medications while driving it to three different locations, and it was inconsistent with Ivy's testimony. Defense counsel argued the inconsistencies in the testimony were meaningless, the evidence showed Moreno's car was in "bad shape," and Moreno's conduct showed he was "a little screwy," but not that he was under the influence of alcohol.

¶ 22    The trial court found Moreno guilty of driving under the influence of alcohol and negligent

driving, specifically finding Ivy's testimony "entirely" credible and Moreno's testimony "less than credible" as it was "laced with inconsistencies." The court discounted Moreno's "inconsistent and unreliable" testimony regarding the condition of his car and noted that Moreno admitted he drank; Ivy had experience in DUI investigations; Moreno drove in a way that drew attention, smelled strongly of alcohol, and had bloodshot, glassy eyes, and slurred speech; and sobriety tests indicated he consumed and was impaired by alcohol. After denying a motion for a new trial, the court sentenced Moreno to 24 months of conditional discharge on the driving under the influence of alcohol count.

¶ 23                                    Analysis

¶ 24    On appeal, Moreno first argues that the evidence was insufficient to prove beyond a reasonable doubt that he was driving under the influence of alcohol. Specifically, Moreno asserts that, given his admission he took prescription drugs in addition to alcohol, the evidence creates a question as to whether it was the "drugs or the unknown substance or a combination thereof with the alcohol" that impaired him while driving in violation of sections 501(a)(3), (a)(4), and (a)(5) of the Code of Criminal Procedure (625 ILCS 5/11-501(a)(3), (4), (5) (West Supp. 2013)). He contends the evidence was, however, insufficient to prove that he had enough alcohol alone in his system to render him incapable of driving safely in violation of section 501(a)(2) as charged.

¶ 25    In reviewing a sufficiency of the evidence challenge to a conviction, we ask whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found all the elements of the crime proven beyond a reasonable doubt. *People v. Phillips*, 2015 IL App (1st) 131147, ¶ 16. We allow all reasonable inferences in favor of the State and defer to the trial court's factual findings because it was in a "superior position to assess the credibility of

witnesses, resolve inconsistencies, determine the weight to assign the testimony, and draw reasonable inferences therefrom." (Internal quotation marks omitted.) *Id.* We will not reverse a conviction unless the evidence is "so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt." (Internal quotation marks omitted.) *Id.*

¶ 26    To sustain a conviction for driving under the influence of alcohol, the State had to prove that Moreno, while in "actual physical control" of a vehicle, was "under the influence of alcohol." 625 ILCS 5/11-501(a)(2) (West Supp. 2013). Moreno does not dispute that he was in "actual physical control" of a vehicle; therefore, the only issue concerns whether he was "under the influence of alcohol." 625 ILCS 5/11-501(a)(2) (West Supp. 2013).

¶ 27    A defendant can be found to have been "under the influence of alcohol" where he was under the influence to a degree that rendered him "incapable of driving safely." (Internal quotation marks omitted.) *Phillips*, 2015 IL App (1st) 131147, ¶ 18. This may be proved entirely by circumstantial evidence (*id.*), such as a defendant's refusal to submit to a test designed to determine his or her blood-alcohol content (see *People v. Johnson*, 218 Ill. 2d 125, 140 (2005) ("refusal to take a test designed to determine the person's blood-alcohol content is admissible and may be used to argue the defendant's consciousness of guilt")). Moreover, "[t]he testimony of a single, credible police officer may alone sustain a conviction for driving under the influence of alcohol." *Phillips*, 2015 IL App (1st) 131147, ¶ 18. A police officer's testimony that the defendant's breath smelled of alcohol, defendant's eyes were glassy or bloodshot, defendant's speech was slurred, defendant was staggering, or defendant failed a field sobriety test is relevant evidence of physical and mental impairment. *Id.* ¶ 19; *People v. Elliott*, 337 Ill. App. 3d 275, 281 (2003). Moreno does not dispute that he was not driving safely. Thus, we are left to determine whether the evidence supports the

trial court's finding that the influence of alcohol rendered Moreno incapable of driving safely.

¶ 28    Viewed in the light most favorable to the State, the evidence suffices to find Moreno was under the influence of alcohol to a degree that rendered him incapable of driving safely. Ivy testified he decided to pull Moreno over when he saw Moreno repeatedly revving his engine and "lung[ing]" towards another car at a stoplight. He followed Moreno for two blocks before pulling him over. When Moreno stopped, he parked diagonally to the curb with his car's rear partially blocking a traffic lane. Moreno got out of the car yelling and threatening Ivy's job. Ivy, who had vast experience with and training in DUI investigations over the course of his 23-year career as a police officer, stated Moreno had a "strong odor of alcoholic beverage on his breath, bloodshot, glassy eyes, [and] slurred, mumbled confused speech." Moreno admitted that he drank two beers that evening. His performance on field sobriety tests indicated to Ivy he consumed alcohol and was impaired, and he behaved erratically at the police station.

¶ 29    In Ivy's opinion, based on his training and experience with over 650 DUI investigations, Moreno was under the influence of alcohol. The testimony of a single, credible officer is sufficient to sustain a DUI conviction. *Phillips*, 2015 IL App (1st) 131147, ¶ 18. The trial court found Ivy credible, and we defer to that credibility determination. *Id.* ¶ 16. Based on this record, the trial court could reasonably conclude Moreno was under the influence of alcohol.

¶ 30    Nevertheless, Moreno contends that, because there was evidence, he also took prescription medications before being pulled over, the State failed to prove that solely the alcohol rendered him incapable of driving safely. He argues, taking all the evidence together with Moreno's admission that he consumed "drugs" as well as alcohol, it proved he may have been rendered incapable of driving safely because he was under the influence of an intoxicating compound or combination of

intoxicating compounds, under the influence of any other drug or combination of drugs, or under the combined influence of alcohol and drug(s) or intoxicating compound(s) (625 ILCS 5/11-601(a)(3), (4), (5) (West Supp. 2013)), but not because he was under the influence of only alcohol (625 ILCS 5/11-601(a)(2) (West Supp. 2013)) as charged. We disagree.

¶ 31    Moreno appears to argue that, merely because there was evidence that he ingested prescription drugs shortly before he was pulled over, the State must disprove that he was under the influence of drug(s) or the combined influence of drug(s) and alcohol to prove him guilty of driving under the influence of alcohol as charged. But the State only had to prove the elements of the offense charged, here that Moreno was driving under the influence of alcohol, not disprove that Moreno may also have been under the influence of another substance. See 625 ILCS 5/11-601(a)(2) (West Supp. 2013).

¶ 32    Further, the evidence that Moreno ingested prescription drugs that ought not to be mixed with alcohol or might affect his driving came from his own testimony, first at the impound hearing some two weeks after his arrest as testified to by Ivy, and then from his trial testimony. And, the trial court found Moreno "less than credible" and we defer to that finding. *Phillips*, 2015 IL App (1st) 131147, ¶ 16. In a similar vein, Moreno claimed he had only two beers and finished the last one with his meal around 11:30 p.m. Yet when Ivy, whom the trial court found "entirely" credible, pulled Moreno over almost three hours later, around 2:17 a.m., Moreno still smelled "strongly" of alcohol and had bloodshot, glassy eyes and slurred speech, all of which can indicate alcohol consumption. *Id.* ¶ 19; *Elliott*, 337 Ill. App. 3d at 281. This evidence supports a reasonable inference that Moreno had more than two beers and imbibed alcohol not long before he was pulled over by Ivy.

¶ 33    As the trial court noted, Moreno admitted he drank, was driving in a way that drew attention, smelled strongly of alcohol, and had bloodshot, glassy eyes and slurred speech; sobriety tests indicated he was impaired; and Ivy, who opined Moreno was impaired by alcohol, had experience in DUI investigations. Viewing the evidence in the light most favorable to the State, we do not find the evidence so improbable or unreasonable to justify a reasonable doubt of Moreno's guilt.

¶ 34    Moreno next argues that the State's failure to amend the complaint before trial to include a charge that he was under the influence of a combination of drugs and alcohol vitiated the trial and otherwise violated his statutory and constitutional rights, as the State proved at trial, he committed an offense under an alternative, uncharged theory. He argues the State offered no proof showing the alcohol alone, not the other drug or drugs, acting together, rendered Moreno incapable of driving safely. Moreno contends the State instead provided evidence only on the alternative theory of a combination of drugs or drugs alone, a theory that was never charged, thereby impliedly amending the indictment and violating his constitutional and statutory rights.

¶ 35    "A criminal defendant has a fundamental right to be informed of the nature and cause of criminal accusations made against him." *People v. Carey*, 2018 IL 121371, ¶ 20. To vitiate a trial, a variance between allegations in a criminal complaint and the proof at trial must be "material" and "of such character as may mislead the accused in making his defense, or expose him to double jeopardy." *People v. Gudgel*, 183 Ill. App. 3d 881, 884 (1989). Where, as here, a defendant challenges a charging instrument for the first time on appeal, defendant must show \ prejudice in the preparation of his or her defense. *People v. Espinoza*, 2015 IL 118218, ¶ 23.

¶ 36    Under these circumstances, the charging instrument is sufficient if it notified the defendant

of the charged offense with enough specificity to allow defendant to prepare his or her defense and to plead the resulting conviction as a bar to future prosecution arising from the same conduct. *Carey*, 2018 IL 121371, ¶ 22. In determining if the charging instrument was so imprecise as to prejudice the defendant's ability to prepare a defense, we may consider the charging instrument in light of the record. *Id.* The sufficiency of a charging instrument presents an issue of law we review *de novo*. *Id.* ¶ 19.

¶ 37    Here, no variance exists between the charge and the proof at trial. As stated, the State proved Moreno guilty of the offense with which he was charged, driving under the influence of alcohol, not an alternative uncharged offense. At trial, Ivy mentioned Moreno's self-reported ingestion of medications, but the State did not, as Moreno asserts, pursue an alternative theory of driving under the influence of drugs and alcohol that was never charged. Instead, in response to the motion for a directed finding, the State argued that even a small amount of alcohol was enough to find Moreno guilty of driving under the influence of alcohol as charged. It then adopted this argument in closing, and argued Moreno's testimony was incredible, necessarily including his testimony that he ingested prescription drugs. In turn, the trial court did not mention the drugs at all in finding Moreno guilty of driving under the influence, instead reciting in detail the evidence it found demonstrated Moreno was driving under the influence of alcohol.

¶ 38    The charge informed Moreno precisely of what the State intended to prove—that he was under the influence of alcohol. And the trial court found Moreno guilty of exactly what he was charged with.

¶ 39    Affirmed.