2023 IL App (2d) 220265-U
No. 2-22-0265
Order filed May 15, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kendall County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 20-CM-281 |
| AMANDA BUCHANAN, | ) ) | Honorable Robert P. Pilmer, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE KENNEDY delivered the judgment of the court.
Justices Jorgensen and Birkett concurred in the judgment.

**ORDER**

¶ 1   *Held*: The State's original complaint tolled the statute of limitations for defendant's charged conduct, and, had defense counsel challenged the complaint before trial, the State would have been able to file an amended complaint. Therefore, defense counsel did not provide ineffective assistance by not challenging the State's complaint before trial, and we affirm.

¶ 2   At issue in this appeal is whether defendant, Amanda Buchanan, received ineffective assistance of counsel when her trial counsel did not move to dismiss the State's complaint nor object to the amended complaint. For the reasons herein, we affirm.

¶ 3                        I. BACKGROUND

¶ 4    On July 8, 2020, the State filed a complaint against defendant for resisting a peace officer in violation of section 31-1(a) of the Criminal Code of 2012 (Criminal Code) (720 ILCS 5/31-1(a) (West 2020) (Class A misdemeanor)). The complaint alleged that, on June 29, 2020, defendant "committed the offense of <u>Resisting</u> in violation of ¶ <u>720</u> Chapter <u>5/31-1(a)</u> a Class A misdemeanor at <u>54 River Bend RD Montgomery</u>."[1] In the space to describe the offense, Police Officer Scott Meyn of the Montgomery Police Department wrote as follows:

> "[W]hile on scene at a Domestic, a petition was being signed for [defendant] to seek medical attention, [defendant] then jumped into her car and refused to get out. I gave [defendant] several verbal commands to exit vehicle and she refused. [Defendant] then had to be forcefully removed from the vehicle."

¶ 5    Defendant's bench trial commenced on May 17, 2022. At the outset, the State told the trial court that, with regard to the complaint, it believed the complaint contained a scrivener's error. Specifically, the State sought to amend the complaint to add the word "knowingly" in order for the complaint to read that defendant *knowingly* jumped into her car and refused to get out. The defense had no objection to the proposed amendment, and the trial court granted the motion to amend the complaint.

¶ 6    The State called Officer Meyn, who testified as follows. In addition to his testimony, Meyn's body-camera footage was admitted into evidence, and our review of his testimony is supplemented by and consistent with this footage.

¶ 7    On June 29, 2020, Meyn received a dispatch regarding a domestic dispute at 54 River Bend. His body camera showed him arriving at the scene in a Montgomery police car and parking on the

---

[1]The underlined language was filled in by hand on blank lines in the form complaint.

street in front of the house next to 54 River Bend. He was wearing his full police uniform. Upon his arrival at the scene, he observed defendant and her father sitting on the porch of the residence. The domestic dispute was between defendant and her father: Her father was trying to remove her from the home, which is why she called the police. Police Officer Robert Kaleta was also present at the scene, and Meyn's body-camera footage showed that Kaleta was in full police uniform.

¶ 8     Meyn first spoke with defendant, who was cooperative, and then spoke with defendant's father, whose name Meyn could not recall. Meyn spoke with defendant's father inside his house, and he did not want to press any charges against defendant. Meyn returned outside to speak with defendant again, and, per the body-camera footage, she wanted to press charges against her father. Meyn told her that, based on what he had heard so far, he was not going to do so. When she said that she would seek a civil remedy, he told her that was her right.

¶ 9     Defendant's father then came outside to speak with defendant. Defendant started getting upset and referenced her brother's death. She said that either she or her brother was going to kill themselves and that he had gotten to it first: "It was always going to be one of us, but it could always be two." On Meyn's body-camera footage, defendant responded to her father's question about whether she was referring to suicide by saying suicide was "an option that has always been open and I've always considered it on a regular daily basis." In response, Meyn called paramedics from the Oswego Fire Department for a mental health evaluation. The paramedics spoke with defendant, and defendant's father signed an involuntary commitment for defendant.

¶ 10    When defendant found out that she was being involuntarily committed, she became uncooperative with medical personnel. She accused her father of whispering in her ear that he wanted to kill himself, and she refused to comply until they also committed him. After Meyn spoke

with her father and refused to act on her accusation, she threatened to call 911, and, against the officer's warning, she did so.

¶ 11    At this point, defendant was sitting on top of her car. When Meyn went to sign paperwork with the paramedic, defendant alighted from the top of the car and entered it through the passenger's-side front door. Meyn opened the same door and asked her to exit the vehicle, and defendant shifted herself into the driver's seat. Kaleta remained at the passenger's side of the car while Meyn moved to the driver's-side door. The door was locked, but Kaleta was able to reach over from the passenger's side of the car and unlock it. Meyn grabbed one of defendant's arms to prevent her from starting the car, and Kaleta grabbed her other arm. Meyn was concerned for both defendant's and the public's safety. Defendant had made suicidal statements, and he believed she posed a danger behind the wheel of a vehicle.

¶ 12    Both Meyn and Kaleta told defendant to exit the vehicle, but she did not comply. The officers collectively asked her to exit "[p]robably 20 times," but at no point would she do so. The officers told her that if she did not step out of the vehicle on her own, they would pull her out, but she continued to not comply. The officers eventually pulled her out of the vehicle and handcuffed her while she was on the ground. While they were handcuffing her, she turned her face toward Meyn's leg and opened her mouth in the direction of his shin; he told her not to bite him (in the body-camera footage, he yells "Do not bite me!"), and she did not bite him. While the officers were handcuffing her, she said she could not breathe. As soon as she was handcuffed, the officers rolled her into the recovery position, which was on her side, and she was breathing. The medics then transported her to the hospital via ambulance.

¶ 13    At the close of the trial, the trial court found defendant guilty of resisting a peace officer. It found that the State had proved that Meyn was a peace officer because he was in uniform and

identified himself as a police officer at the scene. As to whether defendant knew that Meyn was a peace officer, the trial court noted that the video showed that defendant acknowledged Meyn as a police officer. As to whether defendant knowingly resisted the officers in the performance of an authorized act within their official capacities, the trial court found that the officers were acting on a petition for involuntary commitment and that defendant not only refused the officers' commands to exit the vehicle but also tensed up and moved to another seat to avoid the officers.

¶ 14    On July 14, 2022, the trial court sentenced her to 18 months' probation. It also ordered that she perform 100 hours of community service and that she follow the directions of her attending physician, including as to any recommended counseling and medication.

¶ 15    This timely appeal followed.

¶ 16                                II. ANALYSIS

¶ 17    At issue in this appeal is whether defendant's trial counsel provided ineffective assistance by not challenging the State's original and amended complaints as defective. Defendant argues that the complaints were fundamentally defective in that they failed to state a criminal offense. See 725 ILCS 5/111-3(a) (West 2020) (requiring that the charging instrument set forth the nature and elements of the offense charged). Specifically, defendant argues that both the State's original and amended complaints failed to allege that she knew the officers were peace officers and that they were engaged in an authorized act within their official capacities. She contends that reasonable trial counsel would have moved to dismiss the complaints as defective.

¶ 18    Defendant continues that she was prejudiced because the statute of limitations for the charged offense had run as of December 29, 2021, and therefore the State would not have been able to file an amended complaint. She acknowledges that the State generally would be able to amend a defective complaint to include missing elements, but she argues that the date an amended

complaint is made is the date the prosecution commences for purposes of the relevant statute of limitations. She concludes that, in this case, had her trial counsel moved to dismiss the State's complaint, the motion would have been granted and the State would have been unable to amend the complaint.

¶ 19    The State responds that, when a charging instrument is challenged for the first time on appeal, it is reviewed for whether the instrument apprised the defendant of the offense charged with sufficient specificity to enable the defendant to prepare a defense to the offense. The State argues that the complaint apprised defendant of the charged offense.

¶ 20    The State also disagrees with defendant that an amendment to the complaint was precluded by the statute of limitations. It contends that, even if the trial court had granted a motion to dismiss the complaint, the State would have been able to file an amended complaint because the original complaint's filing tolled the statute of limitations.

¶ 21    To show ineffective assistance of trial counsel, a defendant must satisfy the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Dupree*, 2018 IL 122307, ¶ 44. The two prongs are that (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness and (2) counsel's deficient performance prejudiced defendant. *Id.* To establish prejudice, the defendant must show that, but for trial counsel's deficient performance, there was a reasonable probability that the result of the proceeding would have been different. *Id.* If an ineffective assistance of counsel claim fails on the prejudice prong, the court need not consider whether counsel's performance was deficient. *In re L.S.*, 2022 IL App (1st) 210824, ¶ 118.

¶ 22    Criminal defendants have a fundamental right to be informed of the nature and cause of criminal accusations made against them. *People v. Carey*, 2018 IL 121371, ¶ 20. Illinois

implements this right through section 111-3 of the Code of Criminal Procedure of 1963 (Code of Criminal Procedure) (725 ILCS 5/111-3 (West 2020)), with section 111-3(a)[2] imposing specific pleading requirements for criminal charges. Specific pleading requirements protect defendants from being forced to speculate as to the nature or elements of the underlying offense. *Carey*, 2018 IL 121371, ¶ 20. A challenge to the sufficiency of a charging instrument presents a question of law, which we review *de novo*. *People v. Espinoza*, 2015 IL 118218, ¶ 15.

¶ 23    Although a challenge to the sufficiency of the charging instrument may be made at any time, the timing of the challenge affects our review. *People v. Libricz*, 2022 IL 127757, ¶ 36. The charging instrument must strictly comply with section 111-3(a) of the Code of Criminal Procedure if the instrument is challenged before trial but not if it is challenged for the first time on appeal. *Carey*, 2018 IL 121371, ¶ 21-22. When attacking the charging instrument for the first time on appeal, we review the charging instrument for whether it notified the defendant of the charged offense with enough specificity to allow the defendant to (1) prepare a defense and (2) plead a resulting conviction as a bar to a future prosecution arising from the same conduct. *Id.* ¶ 22. "In other words, the appellate court should consider whether the defect in the [charging instrument] prejudiced the defendant in preparing his defense." (Internal quotation marks omitted.) *Id.* (quoting *People v. Thingvold*, 145 Ill. 2d 441, 448 (1991)).

¶ 24    The State urges us to review whether defendant was prejudiced in the preparation of her defense. We disagree with the State that this is the proper lens for this appeal. Defendant is correct

_____

[2]Section 111-3(a) requires that, *inter alia*, the charging instrument cite the statutory provision alleged to have been violated and set forth the nature and elements of the offense charged. *Id.* § 111-3(a)(2), (3).

that her argument involves the pretrial standard for the sufficiency of a criminal complaint because the prejudice she alleges is not prejudice in the preparation of her defense. She argues that had counsel moved to dismiss the criminal complaint before trial, the pretrial motion would have been granted because the State's complaint did not strictly comply with section 111-3(a) of the Code of Criminal Procedure, and the State would have been unable to correct the complaint because the statute of limitations had run. Thus, we address her claim under the *Strickland* standard for prejudice, that is, whether there was a reasonable probability that the result of the proceeding would have been different absent counsel's deficient performance.

¶ 25    We agree with defendant that neither the State's original nor amended complaints strictly complied with section 111-3(a) of the Code of Criminal Procedure, because the complaints did not set forth all the elements of resisting or obstructing a peace officer, including that she knew the officers to be peace officers. Nevertheless, we hold that defendant's trial counsel did not render ineffective assistance, because, in this case, the limitation period had not run and would not have precluded the State from amending the complaint.

¶ 26    The salient issue before us is whether the State's original complaint tolled the 18-month statute of limitations. See 720 ILCS 5/305(b) (West 2020) (misdemeanor prosecutions must be commenced within one year and six months after the commission of the offense). Section 3-7(a) of the Criminal Code (720 ILCS 5/3-7(a) (West 2020)) provides several periods that are excluded from the time that the State has to commence a prosecution. Pertinent here, section 3-7(a)(3) provides:

> "The period within which a prosecution must be commenced does not include any period in which *** a prosecution is pending against the defendant for the same conduct, even if the indictment or information which commences the prosecution is quashed or the

proceedings thereon are set aside, or are reversed on appeal." 720 ILCS 5/3-7(a)(3) (West 2020).

Although section 3-7(a)(3) mentions only prosecutions commenced by indictment and information, it also includes prosecutions commenced by complaint. *People v. Mann*, 341 Ill. App. 3d 832, 838-39 (2003); see 725 ILCS 5/111-1(a) (West 2020) (providing that a prosecution may be commenced by a complaint, an information, or an indictment). Further, the charging instrument in the pending prosecution need not include all the elements of the tolled offense but instead must be for the same conduct as the tolled offense. *Mann*, 341 Ill. App. 3d at 841.

¶ 27 Relying on *People v. Kincaid*, 87 Ill. 2d 107 (1981), defendant contends that section 3-7(a)(3) did not toll the limitation period because a prosecution does not commence until a defective complaint is amended. In *Kincaid*, "[t]he issue to be resolved [was] whether an information [could] be amended prior to trial to include the essential elements of the offense charged" (*Kincaid*, 78 Ill. 2d at 123), and it answered the issue in the affirmative (*id.* at 125). Although the *Kincaid* court stated that the date of an amendment to the information to add an essential element of the offense— there, to add the age of the victim of a sex offense—would be considered the date the original charge was commenced (*id.* at 124-25), the court never discussed tolling the statute of limitations. Instead, it found that the State's amendment to the information was made within the limitation period (*id.* at 126), which obviated the need to discuss tolling. In short, *Kincaid* does not provide guidance on whether a defective criminal complaint commences a prosecution for purposes of tolling the limitation period.

¶ 28 Turning to germane authority, we reject defendant's contention that, under section 3-7(a)(3) of the Criminal Code, a prosecution does not commence until a defective complaint is corrected by amendment. A charging instrument need not be valid to toll the running of the

limitation period. *People v. Saunders*, 235 Ill. App. 3d 661, 670 (1992). This proposition derives from the statutory language providing that a prosecution for the same conduct will toll the limitation period *even if* the charging instrument is quashed, reversed on appeal, or *set aside*. 720 ILCS 5/307(a)(3) (West 2020).

¶ 29 Our supreme court in 1886 examined the then-existing statute for tolling the criminal statute of limitations, which read:

> " 'When an indictment, information, or suit is quashed, or the proceedings on the same are set aside, or reversed on writ of error, the time during the pending of such indictment, information, or suit so quashed, set aside, or reversed shall not be reckoned within the time limited by this act so as to bar any new indictment, information, or suit for the same offense.' " *Swalley v. People*, 116 Ill. 247, 249 (1886).

It explained that the statutory language " 'set aside' " was "very broad in scope" and embraced every other mode of defeat to a criminal proceeding beyond quashing or reversal on appeal. *Id.* at 250; see also *People v. Wells*, 2017 IL App (1st) 152758, ¶ 21 (citing *Swalley* and finding that defendant's guilty plea was "set aside" by the granting of his postconviction petition). Under *Swalley*'s interpretation, "set aside" surely encompasses the granting of a motion to dismiss a criminal complaint, and we see no reason to interpret "set aside" more narrowly in the applicable version of the tolling statute. Defendant's position is at odds with almost 150 years of Illinois jurisprudence.

¶ 30 Here, the State filed its original complaint on July 8, 2020, less than two weeks after the alleged offense occurred. This filing tolled the limitation period for the same conduct. 720 ILCS 5/3-7(a)(3) (West 2020). The original complaint described defendant's conduct of resisting Meyn in violation of section 31-1(a) of the Criminal Code (720 ILCS 5/31-1(a) (West 2020)) on June 29,

2020, by refusing commands to exit her vehicle and having to be forcefully removed from the vehicle. Had defense counsel moved to dismiss the original complaint or objected to the amended complaint, the State would have had more than 17 months to file an amended complaint for the described conduct that incorporated the language of the properly cited statute: that defendant knew Meyn to be a peace officer and that he was performing authorized acts within his official capacity. Considering these circumstances, defense counsel's performance clearly did not prejudice defendant under the *Strickland* standard. Having found no prejudice, defendant's ineffective assistance claim fails.

¶ 31                                      III. CONCLUSION

¶ 32     For the reasons stated, we affirm the judgment of the circuit court of McHenry County.

¶ 33     Affirmed.